OPINION
{¶ 1} Appellant, Ellis L. Sealey, appeals from the June 10, 2002 judgment entry of the Lake County Court of Common Pleas, in which he was sentenced for attempted murder and felonious assault.
 {¶ 2} On December 28, 2001, appellant was indicted by the Lake County Grand Jury on five counts of attempted murder, felonies of the first degree, in violation of R.C. 2923.02 and 2903.02 with firearm specifications in violation of R.C. 2941.145 and 2941.146; and five counts of felonious assault, felonies of the second degree, in violation of R.C. 2903.11(A)(2) with firearm specifications in violation of R.C.2941.145 and R.C. 2941.146. On January 4, 2002, appellant filed a waiver of his right to be present at the arraignment, and the trial court entered a not guilty plea on his behalf.
 {¶ 3} The matter proceeded to a jury trial, which commenced on June 3, 2002. At the close of the state's case, appellant's counsel moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court. At the close of appellant's case, appellant's counsel renewed the Crim.R. 29 motion which was again overruled by the trial court. On June 5, 2002, the jury returned a verdict of guilty on all counts. The trial court denied appellant's request for a presentence report and proceeded immediately to sentencing.
 {¶ 4} The facts at trial revealed the following: on November 2, 2001, Larry Williams ("Williams"), Shawn West ("West"), Chara Winston ("Winston"), and Chakeba Whitley ("Whitley") had planned to go out to dinner. According to Winston, Williams picked up Whitley and herself in an SUV, and they drove from Cleveland to Painesville in order to pick up West. Williams was the driver of the SUV, Winston was seated in the front passenger seat, and Whitley and West were seated in the back of the vehicle.
 {¶ 5} Before going to a restaurant, the four friends went to the Sanders Apartment Complex ("apartment complex") located on Sanders Avenue in Painesville at approximately 5:15 p.m. Winston testified that she and Whitley remained in the SUV while West and Williams got out of the vehicle in the parking lot of the apartment complex. Winston stated that a group of individuals were standing around and West and Williams approached one man, whom West identified as William Scott ("Bunky").
 {¶ 6} According to West, he and Williams were back in the SUV, and Bunky was standing outside of the vehicle when a Dodge Neon came by with two girls in the front and two African-American males in the back. West testified that the two men in the back of the Dodge Neon began shooting at the SUV from two separate guns. West stated that between ten and twelve shots were fired. West was shot in the neck, however, no one else was struck. Williams immediately drove West to LakeEast Hospital. West was ultimately life flighted to Metro General Hospital, where he had surgery and remained for approximately two and a half weeks.
 {¶ 7} Jennifer Ann Spiegel ("Spiegel"), a resident of the apartment complex, testified for the state at trial. According to Spiegel, she and her young son were in the parking lot when she heard gunshots. Spiegel stated that she initially saw "about three people running * * * and at least two people were shooting." Spiegel and her son ran into their apartment and Spiegel called 9-1-1. Spiegel testified that she continued to look outside and determined that two black males were then chasing one man and firing weapons.
 {¶ 8} Officer Toby Burgett ("Officer Burgett"), an officer with the Painesville Police Department ("PPD"), was on duty the day of the incident and was dispatched to the apartment complex. Officer Burgett testified that he received a call that multiple shots had been fired and stated that nearly everybody on that shift went to the apartment complex. When the officers arrived, no one was outside. The officers then began to search for evidence. Officer Burgett discovered a spent shell casing at the intersection of North State Street and Sanders. Officer Burgett then noticed a maroon Corsica with a hole in the rear windshield and subsequently found another casing up the street on Sanders. Officer Burgett stated that officers also found a Buick with a damaged taillight, as well as a Cougar with a damaged trunk lid within close proximity to the Corsica. According to both Officer Burgett and Officer Anthony Powalie ("Officer Powalie"), also an officer with the PPD, a total of eight rounds which included both .380 and 9-millimeter casings were found at the scene.
 {¶ 9} Detective Mark D. Manley ("Detective Manley"), a detective with the PPD, testified that the driver and owner of the Dodge Neon was Chanell Martin ("Martin") and the front seat passenger was Pamela Lynn ("Lynn"). According to Detective Manley, both Martin and Lynn came to the station after the incident and told police what had happened.
 {¶ 10} The following morning, on November 3, 2001, Officer Larry Armstrong ("Officer Armstrong"), an officer with the PPD, discovered and collected three 9-millimeter shell casings in the northbound lane of North State Street. Officer Armstrong also found a bullet hole on the south side of a garage at the apartment complex. However, because the garage was locked and since the resident was not home, Officer Armstrong was unable to inspect the inside of the garage at that time. Officer Armstrong also located two bullet holes in a section of the apartment building. Through the verbal consent of a resident, Detrice Scott, Officer Armstrong entered her apartment and confiscated two 9-millimeter casings which were discovered in her children's bedroom.
 {¶ 11} Officer Powalie testified that on November 3, 2001, at 3:40 p.m., he returned to the apartment complex to do a follow-up. Officer Powalie located the bullet hole which Officer Armstrong wanted him to check on the south side of the garage. Officer Powalie obtained a verbal consent from Amanda Story, the resident, to enter the garage, and confiscated a 9-millimeter bullet from the floor.
 {¶ 12} One week later, on November 10, 2001, Officer Armstrong testified that he located the SUV, a GMC Jimmy, that was believed to be involved in the November 2, 2001 incident at the Grant Street Apartments. Officer Armstrong determined that the vehicle was registered to Williams. The SUV was towed to the Lake County Regional Forensic Laboratory ("LCRFL").
 {¶ 13} Mitchell J. Wisniewski ("Wisniewski"), a forensic finger print and firearms examiner with LCRFL, examined the SUV and recovered a loaded .12 gauge shotgun from the rear of the vehicle and two spent bullets, one from the left rear door and the other from the right passenger door. Wisniewski testified that he analyzed all of the bullets recovered and determined that two different firearms were involved. Wisniewski stated that all the 9-millimeter casings that he analyzed were fired from the same gun, and all the .380 casings were fired from the same gun. With respect to the two bullets found in the SUV, Wisniewski testified that both were fired from the same .380 caliber weapon.
 {¶ 14} Arrest warrants were ultimately issued for Xavier Jackson ("Jackson"), appellant's brother, and appellant, both African-American males. According to Detective Manley, appellant was arrested approximately two weeks after Jackson. Detective Manley testified that he spoke with appellant at the police station, who first indicated that he did not know anything about the incident at issue. According to Detective Manley, appellant then later indicated that he was in the Dodge Neon with Jackson at the Sanders Apartments and that they heard some shots, but did not know where they came from and left the area. However, Detective Manley stated that appellant eventually told him that Jackson had done the shooting with his 9-millimeter gun, but never mentioned a .380 caliber.
 {¶ 15} According to Jackson, who testified as a court's witness, he first told the police that he was not at the scene and did not know anything about the shooting. Jackson admitted changing his story and stated that he was at the scene in the backseat of the Dodge Neon, but that he had no knowledge regarding the shooting. Jackson admitted to changing his story again. Jackson then stated to the police that he and appellant were the backseat passengers in the Dodge Neon, that a 9-millimeter and a .380 caliber were inside the vehicle, and that appellant shot both of the weapons. Jackson told police that there was a shooting and that appellant shot a gun over the hood of the Dodge Neon at a group of people, who did not shoot back. Eventually, Jackson told the police that both he and appellant were the shooters. At trial, however, Jackson testified that he was the shooter, not appellant. Jackson ultimately pleaded guilty to attempted murder charges for the instant shooting.
 {¶ 16} Pursuant to the June 10, 2002 judgment entry, the trial court sentenced appellant to ten years each on counts one, three, five, seven, and nine (attempted murder). Counts three, five, seven, and nine are to be served concurrently with each other and consecutively to count one. Counts two, four, six, eight, and ten (felonious assault) merged into counts one, three, five, seven, and nine, respectively. Appellant was granted one hundred thirty-five days credit for time already served. Appellant was also required to serve an additional three years as a mandatory prison term for the first firearm specification on count one and five years as a mandatory prison term for the second firearm specification on count one, which were to be served consecutive to each other and prior to and consecutive to the foregoing prison term pursuant to R.C. 2929.14(D)(1). Appellant was sentenced for a total period of incarceration of twenty-eight years.
 {¶ 17} Appellant filed a timely notice of appeal on July 3, 2002, and makes the following assignments of error:
 {¶ 18} "[1.] The trial court abused its discretion by calling [Jackson] as a court's witness.
 {¶ 19} "[2.] The state produced insufficient evidence to support appellant's conviction.
 {¶ 20} "[3.] Appellant's conviction is against the manifest weight of the evidence.
 {¶ 21} "[4.] The trial court erred to the prejudice of appellant when it refused to grant appellant's request for a separate sentencing hearing and a presentence investigation.
 {¶ 22} "[5.] The trial court erred to the prejudice of appellant when it ordered consecutive sentences and maximum imprisonment.
 {¶ 23} "[6.] Appellant was unduly prejudiced by ineffective assistance of trial counsel where counsel failed to request a limiting instruction regarding the testimony of the court's witness [Jackson]."
 {¶ 24} In his first assignment of error, appellant argues that the trial court abused its discretion when it called Jackson as a court's witness. Appellant alleges that the trial court's decision to call Jackson pursuant to Evid.R. 614 was unreasonable and arbitrary and allowed the state to circumvent Evid.R. 607.
 {¶ 25} Evid.R. 607(A) governs impeachment and provides that: "[t]he credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage * * *."
 {¶ 26} Evid.R. 614(A) governs the calling of witnesses by the court and states that: "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called."
 {¶ 27} This court stated in State v. Davis (Dec. 10, 1993), 11th Dist. No. 92-L-089, 1993 Ohio App. LEXIS 5917, at 8, that: "[t]he state need not demonstrate surprise in order to cross-examine [a court's] witness. State v. Apanovitch (1987), 33 Ohio St.3d 19, 22. * * * The court's authority to call a witness pursuant to Evid.R. 614(A) is within its inherent authority, and should be exercised in fulfillment of its fundamental duty to arrive at the truth. Evid.R. 614(A), Staff Notes. The appellant must demonstrate an abuse of discretion, which `implies that the court's attitude is unreasonable, arbitrary, or unconscionable.'Apanovitch, 33 Ohio St. at 22." (Parallel citations omitted.)
 {¶ 28} This court further stated in Davis, supra, at 9, that "[d]etermining the witness is varying materially from prior statements before calling her as a court's witness for impeachment purposes generally may be the most prudent course of action. * * * However, Evid.R. 614(A) does not state such a requirement. This procedure is not necessary where the trial judge is reasonably justified in believing that the calling of the person as a court witness would benefit the jury in performing its fact-finding responsibilities. * * *." (Citations omitted.) See, also, State v. Adams (1980), 62 Ohio St.2d 151, 158.
 {¶ 29} In the case at bar, appellant alleges that a manifest miscarriage of justice occurred when the trial court called Jackson as a court's witness over defense counsel's objection. As such, appellant contends that the trial court's decision constitutes plain error.[1]
Appellant stresses that the state's request for the trial court to call Jackson as a court's witness was merely an attempt to circumvent Evid.R. 607, which requires the state to show surprise and damage before it may impeach its own witness. Appellant argues that the jury would never have heard any evidence that appellant was the shooter had the state not been permitted to cross-examine Jackson and impeach him with his prior out-of-court statement to the police that appellant was the shooter. Thus, according to appellant, but for the trial court's decision to call Jackson as its own witness, the outcome of the trial would have been different. We disagree.
 {¶ 30} Evid.R. 607(A) is not applicable in this case because Jackson was not called by the state, but rather by the trial court through its discretion pursuant to Evid.R. 614(A). See Davis, supra, at 7. The instant case is factually on point with Davis, where the court's witness was also the appellant's sibling. In Davis, the appellant's sister's prior statements to the police implicated the appellant. Id. at 9. The prosecutor informed the trial court that the witness had expressed her intention to give contrary testimony at trial. Id.
 {¶ 31} In the case sub judice, the prosecutor informed the trial court that Jackson, the brother of appellant, had recently provided a statement to defense counsel that was contrary to the statement he had previously made to the police and contrary to what he stated during his change of plea hearing. At trial, Jackson testified that he, not appellant, shot a firearm out of the Dodge Neon on the day at issue. However, that testimony clearly contradicted his prior statements to the police that both he and appellant shot firearms from the vehicle. As such, Jackson's testimony at trial was inconsistent with his ultimate statement to the police, which led to his admissions at his plea hearing that both he and appellant had shot at the SUV. Therefore, pursuant toDavis, and Evid.R. 614(A), the trial court properly called Jackson as its witness. Thus, appellant's first assignment of error is without merit.
 {¶ 32} In his second assignment of error, appellant argues that the state produced insufficient evidence to support his conviction. Appellant stresses that the trial court erred in denying his Crim.R. 29 motions for judgment of acquittal.
 {¶ 33} As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13-14:
 {¶ 34} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 {¶ 35} "`"(* * *)The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiryabout due process. It raises a question of law, the resolution of whichdoes not allow the court to weigh the evidence. * * *"'
 {¶ 36} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' * * * `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' * * *" (Emphasis sic.) (Citations omitted.)
 {¶ 37} "* * * A reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." State v. March
(July 16, 1999), 11th Dist. No. 98-L-065, 1999 Ohio App. LEXIS 3333, at 8. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 38} "A Crim.R. 29 motion for acquittal challenges the sufficiency of the evidence presented." State v. Freeman, 11th Dist. No. 2001-A-0053, 2002-Ohio-3366, at ¶ 6, citing State v. Talley (Sept. 25, 1998), 11th Dist. No. 97-L-169, 1998 Ohio App. LEXIS 4526, at 7. This court also stated in State v. Bell (1994), 97 Ohio App.3d 576, 579: "[i]t is well settled that a motion for judgment of acquittal should be granted only where reasonable minds could not fail to find reasonable doubt.State v. Bridgeman (1978), 55 Ohio St.2d 261, 264 * * *. A court cannot enter a judgment of acquittal where the evidence is such that reasonable minds can reach different conclusions as to whether each material element of the crime has been proven beyond a reasonable doubt. [Apanovitch,
supra, at 23.]" (Parallel citation omitted.)
 {¶ 39} R.C. 2923.02(A) provides that: "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 40} R.C. 2903.02(A) states, in part, that: "[n]o person shall purposely cause the death of another * * *."
 {¶ 41} R.C. 2903.11(A)(2) provides, in part, that no person shall knowingly "[c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *."
 {¶ 42} In the instant matter, appellant contends that the trial court erred in denying his Crim.R. 29 motions for judgment of acquittal because the state did not prove beyond a reasonable doubt that he was the shooter. As such, appellant stresses that the essential element of identity was not established. Appellant argues that no rational trier of fact could have found that he was the shooter. Thus, appellant alleges that the state produced insufficient evidence to support his conviction. According to appellant, this matter must be remanded to the trial court for a dismissal pursuant to Crim.R. 29. We are not persuaded by appellant's reasoning.
 {¶ 43} Several facts in this case established beyond a reasonable doubt that appellant was one of the shooters on the evening at issue. According to Detective Manley, both Martin and Lynn immediately went to the police station after the incident. Martin implicated appellant and Jackson as being the shooters. Jackson was located and arrested first, denied any involvement in the incident, then eventually told the police that both he and appellant were the shooters. Appellant was next arrested and like Jackson, initially denied that he was involved in the shootings. Detective Manley testified that appellant eventually admitted that both he and Jackson were at the scene, but that it was Jackson who shot a 9-millimeter gun. Appellant never mentioned anything about a .380 caliber weapon which was also shot that evening.
 {¶ 44} Also, West saw two African-American males firing separate guns from the backseat of the Dodge Neon. According to West, the shots were aimed at the SUV in which West, Winston, Whitley, and Williams were inside and Bunky was standing outside of the SUV. Spiegel testified that she saw two African-American males, each with a gun, shooting and chasing another man. Of the eight casings found in the area of the apartment complex, two were from a 9-millimeter weapon and the other six were from a .380 caliber weapon.
 {¶ 45} Pursuant to R.C. 2903.11(A)(2), any rational trier of fact could have found beyond a reasonable doubt that appellant knowingly caused or attempted to cause physical harm by means of a deadly weapon when he shot a gun toward five individuals in which one, West, was actually injured. Also, based on the foregoing evidence, any rational trier of fact could have found beyond a reasonable doubt that appellant purposely or knowingly engaged in conduct that, if successful, would have caused the death of another pursuant to R.C. 2923.02 and 2903.02. SeeJackson v. Virginia (1979), 443 U.S. 307. As such, based on Schlee,
supra, the jury verdict should not be reversed since there is substantial evidence upon which the jury could reasonably conclude beyond a reasonable doubt that all of the elements of the offense have been proven. Therefore, the trial court did not err in denying appellant's Crim.R. 29 motions for judgment of acquittal. Thus, appellant's second assignment of error is without merit.
 {¶ 46} In his third assignment of error, appellant alleges that his conviction is against the manifest weight of the evidence.
 {¶ 47} As this court stated in Schlee, supra, at 14-15:
 {¶ 48} "* * * `[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 49} "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' (Citations omitted.)" (Emphasis sic.)
 {¶ 50} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 51} In the case at bar, appellant alleges that although the prosecution put on a parade of witnesses, no one testified with respect to appellant's actions. Appellant contends that neither Winston, Whitley, West, or Spiegel were able to identify appellant as the shooter. Appellant also points out that although he told the police that he was at the scene on the evening at issue, he stated that Jackson was the shooter. According to appellant, none of the witnesses testified that they were chased on foot, contrary to Spiegel's testimony. As such, appellant argues that there is simply no evidence to show what, if anything, appellant was doing at the time of the shooting. Therefore, appellant contends that the jury clearly lost its way in convicting him of attempted murder and felonious assault. We disagree.
 {¶ 52} Although appellant alleges a manifest weight argument, it appears that he is challenging the sufficiency of the evidence. In any event, appellant's argument fails under either analysis. As previously discussed in the preceding assignment of error, several facts established beyond a reasonable doubt that appellant was one of the shooters. Martin, the driver of the Dodge Neon, immediately identified appellant and Jackson, the backseat passengers, as being the shooters to the police. Jackson eventually told the police that both he and appellant were the shooters. Appellant admitted that he and Jackson were at the scene, but that it was Jackson who shot a 9-millimeter gun. Appellant never mentioned anything about a .380 caliber weapon, which was also shot that evening.
 {¶ 53} Furthermore, West testified that he saw two African-American males in the backseat of the Dodge Neon fire two separate weapons toward the SUV, in which West, Winston, Whitley, and Williams were inside and Bunky was standing outside of the SUV. Spiegel stated that she saw two African-American males, each with a gun, chasing and shooting another man. Both West and Jackson testified that Bunky ran when the shots were fired. Two casings found at the scene were from a 9-millimeter weapon and the other six were from a .380 caliber weapon. As such, the state presented credible evidence of appellant's guilt. Therefore, pursuant toSchlee, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. Thus, appellant's third assignment of error, which appears to be an extension of the second assignment of error, is also without merit.
 {¶ 54} In his fourth assignment of error, appellant argues that the trial court erred to his prejudice when it refused to grant his request for a separate sentencing hearing and a presentence investigation.
 {¶ 55} Crim.R. 32.2 governs presentence reports and provides, in pertinent part, that: "[i]n felony cases the court shall * * * order a presentence investigation and report before imposing community control sanctions or granting probation."
 {¶ 56} R.C. 2947.051 governs victim impact statements and states:
 {¶ 57} "(A) In all criminal cases in which a person is convicted of * * * a felony, if the offender, in committing the offense, caused, attempted to cause, threatened to cause, or created a risk of physical harm to the victim of the offense, the court, prior to sentencing the offender, shall order the preparation of a victim impact statement * * *.
 {¶ 58} "(B) Each victim impact statement prepared under this section shall identify the victim of the offense, itemize any economic loss * * *, identify any physical injury * * *, identify any change in the victim's personal welfare * * *, and contain any other information related to the impact of the offense upon the victim that the court requires. * * *"
 {¶ 59} State v. Garrison (1997), 123 Ohio App.3d 11, 16-17, states that Crim.R. 32.2: "requires a presentence investigation only as a prerequisite to granting probation, and not as a prerequisite to all sentencing proceedings. * * * The purpose of the [victim impact] statement is to inform the court about any economic loss and physical injury suffered by the victim as a result of the offense and to provide other information about the impact of the offense upon the victim. R.C.2947.051(B). * * * It strikes us that in many cases that are within the broad sweep of R.C. 2947.051(A), a trial judge — having heard all of the testimony — will possess the information contemplated by R.C. 2947.051(B), so that preparation of a victim impact statement will add little to the proceedings other than expense and delay." A trial court's error in failing to order a victim impact statement is not reversible, absent an affirmative demonstration of prejudice to the appellant. State v. Patterson (1996), 110 Ohio App.3d 264, 269, citingState v. Penix (Oct. 23, 1991), 4th Dist. No. 90 CA 1887, 1991 Ohio App. LEXIS 5210, at 14-15.
 {¶ 60} In the instant case, appellant contends that if his counsel had a presentence investigation as well as a separate sentencing hearing, he could have highlighted the fact that there were no victim impact statements presented to the trial court. Appellant alleges that R.C. 2947.051 is clearly required to be applied in this situation. According to appellant, any information that would have been presented in a presentence investigation would have been relevant in determining a lawful sentence for him. Thus, appellant argues that the trial court's decision to forego the victim impact statements is an abuse of discretion. We disagree.
 {¶ 61} In the case at bar, the trial court stated: "I'm not sure what a presentence report would do except actually give me most of the information that I can get right here. The [s]tate is familiar with [appellant's] past, probation is not even a possibility in this case. [Appellant's] already in prison, so there's no question that * * * he has to go to prison. * * * I don't believe that a presentence report is * * * necessary in this case * * *." We agree.
 {¶ 62} The trial court heard all the requisite testimony and, therefore, had knowledge of the type of information pursuant to R.C.2947.051(B). The interested victims appeared and testified at trial. Of the five victims, both Winston and Whitley indicated, during preparation for trial, some psychological harm and alluded to the fact that they were afraid to go to Painesville again, which was referenced at the sentencing hearing. Winston testified that when the shooting began, she ducked on the floor of the vehicle in order to save herself. Furthermore, West testified with respect to how this incident greatly impacted his life. West stated that he was shot in his neck and life flighted to Metro General Hospital where he had surgery and remained for approximately two and a half weeks. Also, West had a noticeable scar on his neck at the time of the trial. As such, the preparation of victim impact statements in this case would have added little, if any, value to the sentencing proceeding besides expense and delay. See Garrison, supra. In addition, appellant failed to show prejudice pursuant to Patterson. Thus, appellant's fourth assignment of error is without merit.
 {¶ 63} In his fifth assignment of error, appellant argues that the trial court erred to his prejudice when it ordered consecutive sentences and maximum imprisonment. Appellant specifically alleges that the record does not support that multiple victims suffered serious psychological harm and that the trial court did not follow the statutory requirements for imposition of consecutive sentences and a maximum sentence.
 {¶ 64} R.C. 2929.12(B)(2) provides that one of the factors to be considered in determining whether an offender's conduct is more serious than conduct normally constituting the offense is whether "[t]he victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense."
 {¶ 65} R.C. 2929.14(E)(4) states that:
 {¶ 66} "[i]f multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 67} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 68} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 69} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 70} In State v. Rupert, 11th Dist. No. 2001-L-151, 2002-Ohio-6911, at ¶ 12, this court stated:
 {¶ 71} "[w]hen reviewing the imposition of a sentence upon a defendant by a trial court, this court will not disturb the sentence unless we find, by clear and convincing evidence, that the record does not support the sentence or that the sentence is contrary to law. Statev. Norwood (June 8, 2001), 11th Dist. No. 2000-L-072, 2001 Ohio App. LEXIS 2573. An appellate court may modify or vacate a sentence if the sentence is contrary to law. R.C. 2953.08(G). However, a court of appeals should modify rather than remand a cause to the lower court for re-sentencing sparingly. This is especially so when the matter is being remanded because the trial court did not set forth sufficient reasons supporting the consecutive sentences. These cases should be sent back for clarification as the trial court clearly is in `the better position to judge the defendant's dangerousness and to ascertain the effect of the crimes on the victims.' State v. Jones (2001), 93 Ohio St.3d 391, 400 * * *. An appellate court should modify a sentence only if that sentence is clearly unsupported by the record. Otherwise, the trial court should be given an opportunity to explain the reason why the sentence was imposed. Id." (Parallel citation omitted.)
 {¶ 72} This court further stated in Rupert, supra, at ¶ 14, that:
 {¶ 73} "[w]hen a trial court decides to impose consecutive sentences under R.C. 2929.14, the court also must follow the requirements set forth in R.C. 2929.19(B). State v. Hoskins (Mar. 16, 2001), 11th Dist. No. 2000-A-0037, 2001 Ohio App. LEXIS 1232. Pursuant to R.C.2929.19(B)(2)(c), the trial court is to justify its imposition of consecutive sentences by making findings that give the court's reasons for selecting this sentence. State v. Bradford (June 1, 2001), 11th Dist. No. 2000-L-103, 2001 Ohio App. LEXIS 2487. The trial court must state on the record its reasons for imposing consecutive sentences. R.C.2929.19(B)(2)(c); Jones, supra. The reasons are the court's provision of a factual explanation setting forth the basis for the findings. State v.Edmonson (1999), 86 Ohio St.3d 324, [326] * * *. These factual considerations may be given after the imposition of consecutive sentences. State v. Sharp, [3d] Dist. No. 1-02-06, [2002-Ohio-2343], at ¶ 15." (Parallel citation omitted.)
 {¶ 74} In State v. Comer, 99 Ohio St.3d 463, paragraph one of the syllabus, 2003-Ohio-4165, the Supreme Court of Ohio recently held that "[p]ursuant to R.C. 2929.14(E)(4) and [R.C.] 2929.19(B)(2)(c), when imposing consecutive sentences, a trial court is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing."
 {¶ 75} In order to sentence a defendant to the maximum term of incarceration, a trial court must make certain findings pursuant to R.C.2929.14(C). Edmonson, supra, at 328. Specifically, "the record must reflect that the trial court imposed the maximum sentence based on the offender satisfying one of the listed criteria in R.C. 2929.14(C)." Id. at 329. Those specified criteria include: (1) the offender committed the worst form of the offense; (2) the offender poses the greatest likelihood of committing future crimes; (3) the offender is a major drug dealer; and (4) the offender is a repeat violent offender. R.C. 2929.14(C).
 {¶ 76} Additionally, when the sentencing court wishes to impose the maximum sentence on a defendant, it must give its reasons pursuant to R.C. 2929.19(B)(2)(d). State v. Jones, 11th Dist. No. 2001-L-176, 2003-Ohio-476, at ¶ 15. This court has held that: "[a] sentence which merely recites the language of R.C. 2929.14(C) without any consideration of the statutorily relevant factors is insufficient. * * * For meaningful review, the record must contain some indication, by use of specific operative facts, that the sentencing court considered the statutory factors in reaching its determination. * * *." State v. Perry, 11th Dist. No. 2000-L-166, 2002-Ohio-1468, at ¶ 12, citing State v. Kase
(Sept. 25, 1998), 11th Dist. No. 97-A-0083, 1998 Ohio App. LEXIS 4498, at 4.
 {¶ 77} In the case sub judice, appellant contends that the trial court erred in finding that multiple victims suffered serious psychological harm. In this sense, appellant alleges that the trial court's determination that the witnesses who testified at trial, and those that did not, as well as the people who live in the general area, all suffered serious psychological harm is erroneous. According to appellant, it was not proper for the trial court to rely upon this "ripple effect" of serious psychological harm in making its finding for consecutive sentences and a maximum term of imprisonment. Thus, appellant argues that consecutive sentences are not necessary to either punish him or to protect the public and stresses that the imposition of a maximum term of imprisonment is contrary to law. We are not persuaded by appellant's contentions.
 {¶ 78} As previously addressed in the preceding assignment of error, during preparation for trial, two of the five victims, Winston and Whitley, indicated that they were afraid to ever come to Painesville again, which was referenced at the sentencing hearing. At trial, Winston testified that when the shooting began, she ducked on the floor of the vehicle in order to save herself. Winston explained that she knew that if she did not duck, she would have gotten shot. In addition, West testified as to how this incident impacted his life. West stated that he was shot in his neck and life flighted to Metro General Hospital where he had surgery and remained for approximately two and a half weeks. For several months after this incident, West was unable to eat due to his injuries and had to be fed through his stomach. Also, West had a noticeable scar on his neck at the time of trial and anticipated further treatment on his vocal cord. Therefore, pursuant to R.C. 2929.12(B)(2), the trial court did not err in determining that several of the victims in this case did in fact suffer either psychological and/or physical harm.
 {¶ 79} When consecutive sentences are imposed under R.C. 2929.14, we reiterate that the trial court must also follow the requirements of R.C. 2929.19(B)(2)(c), which provides that the trial court must justify the imposition of consecutive sentences. In its June 10, 2002 judgment entry, the trial court stated that: "[p]ursuant to Revised Code Section2929.14(E) the [c]ourt finds for the reasons stated on the record that consecutive sentences are necessary to protect the public from future crime or to punish [appellant] and are not disproportionate to the seriousness of [appellant's] conduct and the danger [appellant] poses to the public, and the harm caused by the multiple offenses committed by [appellant] was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of [appellant's] conduct and [appellant's] history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by [appellant]."
 {¶ 80} In addition, at the sentencing hearing, the trial court provided its reasons for imposing consecutive sentences pursuant to R.C.2929.19(B)(2)(c). The trial court stated: "[t]he [c]ourt finds that the situation is aggravated and calls for maximum and consecutive imprisonment because of the multiple victims. Not only the five victims that were in the indictment, but the community at large and all of the houses into which bullets and the cars into which bullets were fired. The [c]ourt finds that there was an utter, absolute utter disregard for life. [Appellant] didn't think one second about anybody's life out there but [his] own. Nobody's. [Appellant] could have killed children sleeping in beds. What the heck is wrong with [him]?"
 {¶ 81} Furthermore, with respect to the imposition of maximum imprisonment, the trial court stated the following at the sentencing hearing: "[t]he [c]ourt finds that maximum imprisonment is consistent with the purposes and principles of sentencing. The [c]ourt finds that [appellant] has the greatest likelihood to commit future crimes, especially in light of his past [criminal] behavior and his young age [nineteen]. The [c]ourt further finds that this offense was one of the worst forms of the offense considering the totality of the circumstances. Anymore egregious conduct would actually have constituted the crime of murder, possibly mass murder."
 {¶ 82} The trial court also stated in its judgment entry that "[t]he [c]ourt finds for the reasons stated on the record pursuant to R.C. 2929.14(C) that [appellant] has committed the worst form of the offense and [appellant] poses the greatest likelihood of recidivism." Based on the foregoing, the trial court made the statutorily mandated findings according to R.C. 2929.14(E)(4) in sentencing appellant to consecutive terms, and gave reasons supporting its findings at the sentencing hearing pursuant to Comer. As such, the consecutive sentences were proper in order to protect the public from appellant and are not disproportionate to appellant's conduct or the danger he posed. In addition, the trial court complied with the statutory requirements of R.C. 2929.14(C) and 2929.19(B)(2)(e) in sentencing appellant to maximum terms due to his history of criminal conduct as well as the great likelihood of appellant committing future crimes. Thus, appellant's fifth assignment of error is without merit.
 {¶ 83} In his sixth assignment of error, appellant argues that he was unduly prejudiced by ineffective assistance of trial counsel. Appellant alleges that his counsel failed to request a limiting instruction regarding the testimony of the court's witness, Jackson. As such, appellant contends that his counsel's representation fell below an objective standard of reasonableness which deprived him of a fair trial.
 {¶ 84} Strickland v. Washington (1984), 466 U.S. 668, 687 states:
 {¶ 85} "[a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable."
 {¶ 86} "* * * When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at paragraph two of the syllabus. State v. Bradley
(1989), 42 Ohio St.3d 136, 142, quoting Strickland, supra, at 694, states: "[t]o warrant reversal, `(t)he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"
 {¶ 87} This court stated in State v. Rudge (Dec. 20, 1996), 11th Dist. No. 95-P-0055, 1996 Ohio App. LEXIS 5807, at 35-36, that: "`[s]trategic and tactical decisions will not form the basis of a claim of ineffective assistance of counsel, even if there had been a better strategy available to him. * * *' `"Errors of judgment regarding tactical matters do not substantiate a claim of ineffective assistance of counsel." * * *.' State v. Lundgren (Apr. 22, 1994), [11th Dist. No. 90-L-15-125, 1994 Ohio App. LEXIS 1722], at 40-41."
 {¶ 88} Evid.R. 801(D)(1)(a) states that a prior statement by a witness is not hearsay if: "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * inconsistent with his testimony, and was given under oath subject to cross-examination by the party against whom the statement is offered and subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition * * *."
 {¶ 89} Evid.R. 803(5) excludes from the hearsay rule: "[a] memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown by the testimony of the witness to have been made or adopted when the matter was fresh in his memory and to reflect that knowledge correctly."
 {¶ 90} In the instant matter, appellant specifically alleges that his counsel was ineffective because he did not request a limiting instruction with regard to Jackson's testimony. Appellant argues that his counsel should have requested that the jury be instructed that Jackson's prior out-of-court statements, namely his statement to the police and a limited portion of his change of plea transcript, were not substantive evidence, but rather were used for impeachment and for the purpose of testing Jackson's credibility. According to appellant, the absence of a limiting instruction regarding the testimony of Jackson prejudiced him from having a fair trial. Appellant stresses that if the jury had not considered Jackson's prior out-of-court statement as substantive evidence, there is a reasonable probability that the outcome of the trial would have been different. We disagree.
 {¶ 91} Jackson had first-hand knowledge of the incident at issue since he was with appellant when the-shootings occurred. Jackson's plea regarding his involvement in the incident was made shortly thereafter. At trial, Jackson's testimony demonstrated that he lacked a present recollection of the incident and a review of the transcript of his change of plea hearing, which he deemed to be accurate, failed to refresh his recollection. Pursuant to Evid.R. 801(D)(1)(a), there is a requirement of an opportunity for meaningful cross-examination before a prior inconsistent statement may be use as substantive evidence. In this case, however, Jackson's prior statements, which were not subject to cross-examination, were treated as substantive evidence rather than for impeachment purposes. Also, with respect to Jackson's statement to the police, Jackson did not testify at trial as to the accuracy of his statement. In this sense, a proper foundation was not made for the police statement as a past recollection recorded. Therefore, defense counsel's failure to seek a limiting instruction constituted error. We conclude from the state of the evidence, however, that the error was harmless beyond a reasonable doubt. See Davis, supra, at 18. Based on Strickland,
appellant fails to show that counsel's deficient performance prejudiced the defense. Thus, there has been no showing of the reasonable probability that had appellant's counsel done things in another manner, the outcome would have been different.
 {¶ 92} As previously addressed, Martin, the driver of the Dodge Neon, immediately identified appellant and Jackson, the backseat passengers, as being the shooters to the police. Appellant admitted that he and Jackson were at the scene on the evening at issue. West testified that he saw two African-American males in the backseat of the Dodge Neon fire two separate weapons. Spiegel stated that she saw two African-American males, each with a gun, chasing and shooting another man. Two casings found at the scene were from a 9-millimeter weapon and the other six were fired from a .380 caliber weapon. Therefore, given the overwhelming evidence against appellant, even assuming arguendo that defense counsel sought a limiting instruction, the result of the proceeding would not have been different. Thus, appellant's sixth assignment of error is without merit.
 {¶ 93} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
Judgment affirmed.
William M. O'neill and Cynthia Westcott Rice, JJ., concur.
[1] We must note that we are not analyzing this assignment on a plain error basis since a timely objection was made, which appellant admitted in his brief.