OPINION
{¶ 1} This appeal arises from the Lake County Court of Common Pleas wherein, appellant, Terrell E. Spikes, was indicted on four counts of trafficking in cocaine, a felony in the fifth degree, in violation of R.C. 2925.03(A)(1).
 {¶ 2} The following facts were presented at trial. In August 2001, a confidential informant working under the pseudonym "Grace Group," began making controlled drug buys in the Painesville area for the Lake County Narcotics Agency ("LCNA"). The controlled drug buys were set up in the following manner. Group would report to LCNA headquarters where both her person and her vehicle were searched for drugs. Group was then fitted with an undercover wire which would be used to transmit an audio signal to LCNA agents who were monitoring nearby. The agents also installed a hidden camera in a bag placed on the floor behind the driver's seat of Group's vehicle. Group would then drive from LCNA headquarters to Painesville, then through areas of the city known for drug activity, and wait for dealers to approach her vehicle. She would ask for crack cocaine. Group testified that she brought both of her dogs with her to protect her as she was making the buys. The typical transaction was three rocks of crack cocaine for $50 and lasted no longer than one to two minutes. After the buy was completed, Group would drive to a designated location and turn the substance over to the LCNA agents to be sent for testing. The undercover wire would be removed from Group and the surveillance tape would be removed from the video camera in the vehicle.
 {¶ 3} The charges against Spikes arose from four separate controlled drug buys involving Group. The buys took place on August 1, 16, 29, and September 10, 2001.
 {¶ 4} In the first buy, Spikes approached Group, who was in her car in Painesville, and offered to sell her crack cocaine for $50. Group handed Spikes the money in exchange for the substance. Group then returned to the designated area and turned the substance and the videotape over to the LCNA agents. The videotape was played in open court during Spike's trial.
 {¶ 5} In the second buy, Group was driving her car down Prospect Street in Painesville, this time near a convenience store which was well known to be frequented by drug dealers. As she approached the parking lot of the store, Spikes and others approached her vehicle and offered to sell her crack cocaine. Spikes can clearly be seen as one of several persons conversing with Group, and selling her crack cocaine for $50. Group again met the LCNA agents at the designated location and turned over the substance and the videotape. That videotape was also played in open court at Spike's trial.
 {¶ 6} The third buy occurred on August 29, 2001. Group again drove to Prospect Street and was approached by Spikes. He again offered to sell her crack cocaine in exchange for $50. The buy occurred and Group followed the previous protocol, giving the tape and the substance to the agents at the designated location. The videotape of this transaction was also played in open court at Spike's trial.
 {¶ 7} The fourth and final buy occurred on September 10, 2001 and took place at the convenience store on Prospect Street. On the videotape, Spikes can be seen exiting a Chevrolet Blazer parked at the convenience store. He then approached Group's vehicle and offered to sell her crack cocaine for $50. The buy was made and Group turned the tape and substance over to LCNA agents. The videotape of the fourth buy was also played in open court at Spike's trial.
 {¶ 8} Along with the video taped buys, the state presented the testimony of Group, two LCNA agents and two chemists from the Lake County Forensic Lab. At the close of the state's evidence, the defense moved for a judgment of acquittal pursuant to Crim.R. 29. The trial court overruled that motion. The defense then rested without calling any witnesses or presenting any evidence. The jury subsequently convicted Spikes on all four counts of trafficking in cocaine. Spikes was sentenced to eleven months imprisonment on each count, to be served concurrently. The court further ordered the sentence to be served consecutive to a term Spikes was serving for another offense.
 {¶ 9} Spikes timely filed this appeal, presenting four assignments of error. The first assignment of error is: "The trial court erred to the prejudice of the defendantappellant when it denied his motion for acquittal made pursuant to Crim.R. 29."
 {¶ 10} The defense enters a Crim.R. 29 motion for acquittal to challenge the sufficiency of the evidence presented.[1]
A judgment of acquittal on a Crim.R. 29 motion cannot be entered "* * * where the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[2] An appellate court must examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.[3]
 {¶ 11} Spikes was convicted on four counts of trafficking in cocaine, in violation of R.C. 2925.03(A)(1). That statute reads, in pertinent part:
 {¶ 12} "(A) No person shall knowingly do any of the following:
 {¶ 13} "(1) Sell or offer to sell a controlled substance[.]"
 {¶ 14} In support of his argument on the insufficiency of the evidence, Spikes contends only that the state failed to prove the element of identity, to-wit: the state did not prove beyond a reasonable doubt that it was Spikes who sold the drugs in question.
 {¶ 15} At trial the state presented the testimony of Group and two LCNA agents. Group identified Spikes as the individual from whom she bought the drugs on the four incidents in question. Spikes contends that Group did not seek out Spikes in particular when making the buys and she did not know who he was until she was told his name by the LCNA agents. We find neither of these contentions to have any bearing on Group's identification of Spikes as the person who approached her vehicle and sold her the drugs. Both LCNA agents testified that Spikes was the individual they viewed on the videotapes selling the drugs to Group. Both agents testified that they recognized Spikes as he, himself, had worked as a confidential informant for LCNA less than one year before the buys in question occurred.
 {¶ 16} The state also offered the videotapes of each buy into evidence. The tapes were admitted into evidence and each tape was played in open court before the jury. Group also identified Spikes on the tapes as the individual who sold her the drugs.
 {¶ 17} Based on the foregoing, we conclude that the state presented sufficient evidence which, if believed, would convince the average mind, beyond a reasonable doubt, that Spikes was the individual who sold the drugs to Group.
 {¶ 18} Spikes first assignment of error is without merit.
 {¶ 19} The second assignment of error is: "The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 20} In his brief, Spikes argues that this court should apply the eight factors promulgated by the Eighth Appellate District in State v. Mattison, in determining whether his convictions were against the manifest weight of the evidence.[4] However, this court has repeatedly emphasized that the Mattison factors can be used as guidelines to be considered when considering the weight of the evidence, but do not create a new standard for evaluating manifest weight claims.[5]
 {¶ 21} In determining whether a conviction is against the manifest weight of the evidence:
 {¶ 22} "`[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"[6] The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to decide.[7]
 {¶ 23} Spikes essentially utilizes the same argument as in his first assignment of error, contending that his convictions for trafficking in cocaine were against the manifest weight of the evidence as the state did not prove identity.
 {¶ 24} As noted in the foregoing, the state presented the testimony of Group and the two LCNA agents, as well as the videotaped transactions, to prove the element of identity. We cannot conclude that, when presented with the testimony of the state's witnesses, coupled with the four videotapes, in which Spikes can be seen approaching Group's vehicle and exchanging the drugs for money, the jury "clearly lost its way and created a manifest miscarriage of justice." Spikes was present at the trial and was identified by each witness. Thus, the element of identity was established in a convincing fashion. Spikes' convictions are not against the manifest weight of the evidence.
 {¶ 25} Spikes' second assignment of error is without merit.
 {¶ 26} The third assignment of error is: "The trial court erred to the prejudice of the defendant-appellant when it ordered a term of imprisonment where its statutory findings were not supported by the record."
 {¶ 27} In his third assignment of error, Spikes suggests that the trial court improperly imposed concurrent eleven-month sentences which were not supported by the record.
 {¶ 28} When imposing a sentence on a felony offender a trial court has the discretion to determine the most effective means of comporting with the purposes and principles of sentencing as set forth in R.C. 2929.11.[8] The court must consider the factors relating to the seriousness of the conduct set forth in R.C. 2929.12(B) and (C), the factors relating to the likelihood of recidivism set forth in R.C. 2929.12(D) and (E), and any other factors germane to the principles of felony sentencing.
 {¶ 29} The trial court stated on the record at the sentencing hearing, regarding the factors in R.C. 2929.12(B) relating to seriousness of the conduct, that Spikes acted for hire or as a part of an organized criminal activity as, in one of the buys, Spikes can be seen selling drugs in conjunction with others. The court also noted that Spikes demonstrated he was a "dealer" as he participated in several sales. The court then noted that there were no factors under R.C. 2929.12(C). Although it did not have to state specifically the recidivism factors under R.C.2929.12(D) and (E), the court noted that Spikes past criminal drug history, failure to respond to previous sanctions, and lack of remorse, were factors relating to seriousness and recidivism.
 {¶ 30} Spikes contends that these findings were not supported by the record. He first contends that he did not act for hire or as part of organized criminal activity. However, one videotaped buy shows Spikes standing with other individuals, attempting to make the sale. Group also testified that during these drug buys individuals would work in tandem, in an attempt to distract the buyer and obtain the money without having to turn over the drugs, and that Spikes had operated as such on one of the buys.
 {¶ 31} Spikes also argues that the court erred in finding that there were no mitigating factors under R.C. 2929.12(C)(4). He contends that he was "raised in an environment where drug use and trafficking was the norm" which made it difficult for Spikes to abstain from such behavior. We, like the trial court, are not persuaded by this assertion. The mere fact that one has grown up in an environment where illegal drugs are prevalent does not preclude one from being responsible for one's own actions.
 {¶ 32} Spikes also contends that the trial court erred in finding that he was not remorseful for his actions. It has been long recognized by this court that the trial court remains in the best position to determine whether a defendant has expressed genuine remorse for his actions.[9] In the instant case, the trial court found that Spikes had not expressed genuine remorse for his actions. The court took note of Spikes' expression of remorse yet was not convinced by his statements. We conclude that the trial court did not abuse its discretion in determining that Spikes was not remorseful.
 {¶ 33} Finally, Spikes argues that the trial court improperly found that he committed the worst form of the offense. Pursuant to R.C. 2929.14(C), the trial court must find that the offender committed the worst form of the offense before imposing the maximum sentence.
 {¶ 34} In the instant case, the trial court found that Spikes committed the worst form of the offense, "* * * in that [Spikes] demonstrated that he is a drug dealer and that he sold drugs on four separate occasions." Although we do not comment directly on whether Spikes did, in fact, commit the worst form of the offense of trafficking in cocaine, we do recognize that the trial court's finding of such is not in error as it was not a required finding. The maximum sentence which could have been imposed on Spikes for trafficking in cocaine is twelve months imprisonment. The trial court elected to sentence Spikes to eleven months imprisonment on each count. Therefore, the court was not obligated to make a finding as to whether Spikes committed the worst form of the offense.
 {¶ 35} Based on the foregoing reasons, we conclude the trial court did not err in imposing sentence on Spikes and that it complied with the statutory requirements and analysis.
 {¶ 36} Spikes' third assignment of error is without merit.
 {¶ 37} The fourth assignment of error is: "The trial court erred to the prejudice of the defendant-appellant when it ordered his sentence to be served consecutive to the sentence he was currently serving."
 {¶ 38} Before imposing consecutive sentences, the trial court must determine that they are "* * * necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]"[10] The trial court must also determine that one of the factors enumerated in R.C. 2929.14(E)(4)(a)-(c) is present: (a) that the offender was awaiting trial or sentencing or was under a community control sanction; (b) the harm caused by the offenses is so great that a single term of imprisonment would not adequately reflect the severity of the conduct; or (c) the offender's prior criminal history demonstrates that consecutive sentences are necessary to protect the public from future criminal activity.
 {¶ 39} The Supreme Court of Ohio has recently held that this two-part finding set forth in R.C. 2929.14(E)(4) must be conducted on the record at the sentencing hearing and not merely in the written judgment entry.[11]
 {¶ 40} In the instant case, the trial court made its findings at both the sentencing hearing and in the written judgment entry. At the sentencing hearing the trial court noted:
 {¶ 41} "The Court finds that consecutive sentences are necessary in this case to Case No. 02CR121 and they are necessary in order to protect the public or punish the offender and are not disproportionate to the seriousness of the offender's conduct and the danger the offender poses to the public.
 {¶ 42} "* * *
 {¶ 43} "The Court finds that the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct and the history of the defendant's conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender and the Court gives the specific reasons for making this sentence consecutive in that the defendant participated in multiple crimes, that he has a history of participating in multiple crimes, that he has demonstrated that he's an active drug dealer and that this was not an isolated drug sale, that his conduct was egregious, that he has served a multiple prison term and that he had parole and multiple parole and probation violations and he is currently serving a prison term."
 {¶ 44} Thus, the court not only found that consecutive sentences were warranted, it also complied with R.C.2929.19(B)(2)(c) when it provided the underlying reasons for the imposition of consecutive sentences. Thus, we conclude the trial court complied with the statutory sentencing mandates and did not err in imposing consecutive sentences.
 {¶ 45} Therefore, based on the foregoing, the judgment of the Lake County Court of Common Pleas is affirmed.
Ford, P.J., Rice, J., concur.
[1] State v. Talley (Sept.25, 1998), 11th Dist. No. 97-L-169, 1998 Ohio App. LEXIS 4526, at *7.
[2] State v. Sealey, 11th Dist. No. 2002-L-100, 2003-Ohio-6697, at ¶ 38.
[3] Talley, supra.
[4] (1985), 23 Ohio App.3d 10.
[5] (Citation omitted.) State v. Krug, 11th Dist. No. 2000-L-108, 2002-Ohio-2108 at ¶ 22.
[6] State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
[7] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[8] State v. Davis, 11th Dist. Nos. 2003-L-027, 2003-L-028, 2004-Ohio-2076, at ¶ 13.
[9] State v. Eckliffe, 11th Dist. No. 2001-L-104, 2002-Ohio-7135, at ¶ 30.
[10] R.C. 2929.14(E)(4).
[11] State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165.