**The STATE of Ohio, Appellee,**

v.

**GARRISON, Appellant.**

[Cite as *State v. Garrison* (1997), 123 Ohio App.3d 11.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 96 CA 127.

Decided Sept. 19, 1997.

*Robert K. Hendrix*, Greene County Assistant Prosecuting Attorney, for appellee.

*Kristen Louderback*, for appellant.

**14**

WOLFF, Judge.

Adrian L. Garrison was found guilty by a jury in the Greene County Court of Common Pleas of two counts of robbery and two counts of abduction. He was sentenced to indefinite terms of eight to fifteen years on each of the robbery charges and indefinite terms of five to ten years on each of the abduction charges. All sentences were to be served consecutively to each other. Garrison appeals from his conviction.

The state's evidence established the following.

In early September 1995, Curtis Miller was involved in a traffic accident while Garrison was a passenger in his car. Garrison received medical treatment at a hospital following the accident, and he subsequently received a bill in the amount of $710.70 from the hospital. Miller did not have insurance, but Garrison wanted Miller to pay the bill.

According to Miller, in the afternoon of September 22, 1995, he received a telephone call from Garrison. Garrison threatened that if Miller did not pay the bill or give Garrison "some stuff" to cover the cost of the bill, Garrison would "kick [his] ass." Then, in the early morning hours of September 23, Garrison, his brother, and another man went to Miller's apartment. Miller, his roommate Eric Cannon, and their girlfriends, Audrey Blauser and Nicole Ciano, were in the apartment at the time. Cannon admitted Garrison and the others into the apartment, where they demanded "money and stuff" in compensation for Garrison's hospital bill. When Miller informed them that he did not have any money, the men began gathering items to take from the apartment. The men ordered Cannon to point out items which belonged to Miller. According to Cannon, the men started "taking stuff and packing stuff up and threatening to kick our ass if we tried doing anything."

Garrison and the other men were in the apartment for approximate forty-five minutes. Cannon tried to call the police, but Garrison prevented him from doing so. At one point, Garrison pulled Miller by the shirt into the bedroom to collect additional items, pushed him up against a wall, and had his brother take Miller's necklace off. In addition to the necklace, the men took a compact disc changer and forty-eight discs, an amplifier, speakers, a pager, underwear, a gold earring, and cologne belonging to Miller, and a cordless phone, caller I.D. box, and amplifier belonging to Cannon. Miller and Cannon testified that they had been frightened and had not felt that they could stop the men from taking their belongings from the apartment because the men were bigger than they and because they were outnumbered.

Blauser and Ciano were sitting on the couch in the living room of the apartment throughout most of the incident. At one point, the women tried to

leave the apartment to call the police, but Garrison and his brother blocked their way and ordered them to sit back down. Both women testified that they had been afraid they would get hurt.

After Garrison and the others took the property to their car and drove away, Cannon called the police from a neighbor's phone.

Garrison testified in his own defense. He stated that Miller had agreed to give him the property in question in satisfaction of the hospital bill, and that Miller had even helped him unhook the stereo equipment. He denied trying to intimidate Miller or pulling him at any time. Garrison also denied that he had taken some of the items on Miller's list of stolen property, including the CD changer and the speakers. The defense also presented the testimony of the girlfriend of Garrison's brother, who had been driving the men around that night. She testified that they had not seemed rushed when they came out of Miller's apartment.

Garrison was charged with two counts of robbery related to Miller and Cannon and two counts of abduction related to Blauser and Ciano. He pled not guilty and was tried by a jury on September 23 to 25, 1996. Garrison was found guilty as charged. He was sentenced as described above.

Garrison asserts four assignments of error on appeal.

"I. The trial court committed prejudicial error by entering judgment of conviction for both abduction and robbery, which under the circumstances of this case are allied offenses of similar import."

Garrison argues that abduction and robbery are allied offenses of similar import. Therefore, he claims, the trial court was required to merge his abduction and robbery convictions pursuant to R.C. 2941.25, which prohibits multiple convictions based upon allied offenses of similar import.

Garrison did not assert in the trial court that his robbery and abduction convictions were allied offenses of similar import. The Supreme Court has held that a defendant's failure to object to convictions or sentencing at trial results in waiver of an allied–offense claim on appeal. *State v. Comen* (1990), 50 Ohio St.3d 206, 211, 553 N.E.2d 640, 645–646. Thus, Garrison may not raise this issue for the first time on appeal.

Moreover, Garrison's argument would fail even if it had been properly preserved for appeal. A defendant must show that the prosecution has relied upon the same conduct to support both offenses charged in order to obtain the protection of R.C. 2941.25(A). *State v. Logan* (1979), 60 Ohio St.2d 126, 128, 14 O.O.3d 373, 374, 397 N.E.2d 1345, 1347–1348. In this case, where the victims of the robberies were different from the victims of the abductions, the state clearly

has not relied upon the same conduct in support of the various charges. Even where a defendant commits the *same* offense against different victims during the same course of conduct, a separate animus exists for each victim, so that the defendant can properly be convicted of and sentenced on multiple counts. *State v. Gregory* (1993), 90 Ohio App.3d 124, 129, 628 N.E.2d 86, 89–90. See, also, *State v. Phillips* (1991), 75 Ohio App.3d 785, 789–790, 600 N.E.2d 825, 828–829.

The first assignment of error is overruled.

"II. The trial court committed prejudicial error by not requiring a presentence investigation or victim impact statement."

Garrison claims that Crim.R. 32.2 required the trial court to order a presentence investigation because he was eligible for probation and that R.C. 2947.05 required the court to order a victim-impact statement. He contends that he may have received a lighter sentence if the trial court had ordered and considered these items. We note, however, that Garrison did not request the preparation of a presentence investigation or victim-impact statement in the trial court.

■ Crim.R. 32.2(A) states, "In felony cases the court shall * * * order a presentence investigation and report before granting probation." This rule requires a presentence investigation only as a prerequisite to granting probation, and not as a prerequisite to all sentencing proceedings. The trial court's decision to sentence Garrison to the maximum sentence for each offense, and to make all four sentences consecutive, is strong evidence that the court did not consider placing Garrison on probation. Therefore, it was not required to order a presentence investigation.

■ R.C. 2947.051(A) provides that "the court, prior to sentencing the offender, shall order the preparation of a victim impact statement" if the offender "caused, attempted to cause, threatened to cause, or created a risk of physical harm to the victim of the offense." The purpose of the statement is to inform the court about any economic loss and physical injury suffered by the victim as a result of the offense and to provide other information about the impact of the offense upon the victim. R.C. 2947.051(B). The victim-impact statement must be considered by the trial court in sentencing the defendant. R.C. 2947.051(A) and R.C. 2929.12(A). Given the breadth of the language describing the circumstances triggering the requirement that a victim-impact statement be prepared, and the testimony of the victims, the trial court apparently erred in failing to comply with this requirement.

Garrison contends that "it cannot be said that a victim impact statement has never been a mitigating factor in a case." He has not demonstrated or even alleged, however, that the trial court might have been inclined to impose a lighter sentence if a victim-impact statement had been prepared in this case. From the

trial testimony, the trial court had information about the type of economic harm suffered by Miller and Cannon and about the minimal physical injury, if any, to the victims. Thus, if the trial court had been inclined to take these factors into account in sentencing Garrison, it could have done so. Garrison has not pointed to any other information that would have been set forth in a victim-impact statement that could have worked to his advantage. Indeed, in this case at least, the statutory requirement that a victim-impact statement be prepared seems to have imposed an unnecessary burden upon the trial court. It strikes us that in many cases that are within the broad sweep of R.C. 2947.051(A), a trial judge — having heard all of the testimony—will possess the information contemplated by R.C. 2947.051(B), so that preparation of a victim-impact statement will add little to the proceedings other than expense and delay.

Garrison having demonstrated no prejudice from the trial court's error, his second assignment of error is overruled.

"III. The trial court abused its discretion by imposing a penalty on the defendant for having the case tried by a jury as evidenced by maximum consecutive sentences being imposed and the failure of the court to consider the relevant statutory sentencing criteria."

Garrison contends that his sentence to the maximum allowable term on each offense was "strikingly inconsistent" with the statutory sentencing criteria. He also claims that the sentence was intended to punish him for exercising his right to a jury trial.

R.C. 2929.12 sets out factors that the court must consider when imposing an indefinite term of imprisonment, some of which weigh in favor of either a longer or a shorter minimum term of imprisonment. A silent record raises the presumption that a trial court considered the factors contained in R.C. 2929.12. *State v. Adams* (1988), 37 Ohio St.3d 295, 525 N.E.2d 1361, paragraph three of the syllabus. If a trial court's sentence is within the statutory limits, it will be presumed that the trial court considered the relevant factors in the absence of an affirmative showing that it failed to do so. *State v. Crouse* (1987), 39 Ohio App.3d 18, 20, 528 N.E.2d 1283, 1285–1286. That presumption may be overcome, however, when the sentence imposed is strikingly inconsistent with the R.C. 2929.12 factors applicable to the case. *State v. Flors* (1987), 38 Ohio App.3d 133, 140, 528 N.E.2d 950, 957–958.

Pursuant to R.C. 2929.12(A), the sentencing court must consider the risk that the offender will commit another crime and the need to protect the public from that risk, the nature and circumstances of the crime, the impact of the crime on the victim, the history, character, and condition of the offender, and his need for correctional or rehabilitative treatment. The factors to be considered in favor of

a longer sentence include whether the offender is a repeat or dangerous offender and whether the victim has suffered severe social, psychological, physical, or economic injury as a result of the offense. R.C. 2929.12(B). The factors to be considered in favor of a shorter sentence include whether the offense neither caused nor threatened serious physical harm to persons or property. R.C. 2929.12(C). Garrison claims that the sentence imposed by the trial court was strikingly inconsistent with the R.C. 2929.12 factors applicable to the case so as to overcome the presumption that the trial court acted within its discretion in weighing these factors and in imposing the sentences that it imposed.

In considering the factors set forth in R.C. 2929.12, we note that any physical injury to the victims was, at most, minimal and that the property involved in the robberies was not of great value. Thus, there is no evidence that the victims "suffered severe social, psychological, physical, or economic injury as a result of the offense." See R.C. 2929.12(B). Although Garrison had previously been convicted of receiving stolen property, the record does not demonstrate that Garrison had an extensive criminal record or a history of violent offenses. Likewise, other than the trial testimony, there is no information of record about the risk Garrison might pose to the public or about his condition, character, and need for rehabilitation. Nonetheless, the trial court imposed the maximum sentence for each offense and ordered that the sentences be served consecutively. In light of the minimal harm, if any, to the victims and modest value of the property taken, this aggregate sentence, in the absence of some explanation by the trial court for its severity, strikes us as inconsistent with the R.C. 2929.12 factors applicable to this case, and we thus cannot indulge the usual presumption arising from a silent record that the trial court complied with the statute. Accordingly, we will reverse the judgment and remand the matter for new sentencing proceedings, wherein the R.C. 2929.12 factors applicable to this case shall be considered. Given this basis for reviewing the judgment, we will not consider whether the sentences were punishment for Garrison's exercising his right to a trial by jury.

The third assignment of error is sustained.

"IV. Appellant's conviction for abduction is based upon insufficient evidence and/or against the manifest weight of the evidence."

Garrison asserts that his convictions for abduction were not supported by he evidence because he "did not use any force other than words" and because he did not create a risk of physical harm to the victims or place them in fear.

R.C. 2905.02(A)(2) defines abduction as follows:

"(A) No person, without privilege to do so, shall knowingly do any of the following:

"* * *

"(2) By force or threat, restrain another of his liberty, under circumstances which create a risk of physical harm to the victim, or place him in fear."

Ciano testified that she and Blauser had attempted to leave the apartment, but that Garrison and his brother stepped in front of the door, would not allow them to pass, and told them to sit back down. Ciano testified that she had not attempted to proceed through the door because she was scared that she would be hit. She also testified that "[w]ith the tone of voice [Garrison] used to tell us to sit back down, to me, it meant, you do this or you suffer the consequences * * *." Similarly, Blauser stated that the brothers blocked the doorway when she and Ciano attempted to leave and that she was afraid of them because they were bigger than she and because she was eight months pregnant at the time.

This testimony, if believed by the jury, was sufficient to prove that Garrison had used the threat of force to restrain the liberty of Ciano and Blauser under circumstances that placed them in fear. Thus, his conviction of the abduction charges was not against the manifest weight of the evidence.

The fourth assignment of error is overruled.

The judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with our discussion of the third assignment of error.

*Judgment reversed*
*and cause remanded.*

BROGAN and GRADY, JJ., concur.