[Cite as *State v. Tajblik*, 2016-Ohio-977.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                          Court of Appeals No. WD-14-064

        Appellee                                   Trial Court No. 2014-CR-0148

v.

Albert Tajblik                                        **DECISION AND JUDGMENT**

        Appellant                                  Decided:  March 11, 2016

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Tim A. Dugan, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Wood County Court of Common

Pleas that found appellant guilty of one count of misdemeanor assault, two counts of

rape, one count of abduction and one count of disrupting public services.  For the

following reasons, the judgment of the trial court is affirmed.

{¶ 2} The undisputed facts relevant to the issues raised on appeal are as follows. On April 17, 2014, appellant was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(1), three counts of rape in violation of R.C. 2907.02(A)(2), one count of abduction in violation of R.C. 2905.02 and one count of disruption of public services in violation of R.C. 2909.04(A)(1). The matter was tried to a jury on July 23 and 24, 2014. The jury found appellant guilty of misdemeanor assault in violation of R.C. 2903.13(A), two of the rape counts, abduction and disrupting public services. (Appellant was found not guilty of one of the rape counts.) The trial court sentenced appellant to 180 days on the assault conviction, 10 years each on the two rape convictions, 30 months on the abduction conviction and 12 months on the disrupting public services conviction. The trial court ordered the assault and disrupting public services sentences to be served concurrently to all other counts and ordered the rape and abduction sentences to be served consecutively to each other for a total sentence of 22 years and six months incarceration. Additionally, after a sexual offender registration hearing, the trial court found appellant to be a Tier III sexual offender. Appellant filed a timely appeal.

{¶ 3} Appellant sets forth the following assignments of error:

1. The State of Ohio failed to provide legally sufficient evidence to sustain a conviction for Disrupting Public Services.

2. The State of Ohio failed to provide legally sufficient evidence to sustain a conviction for Abduction.

2.

3. Appellant's convictions for Disrupting Public Services, Abduction, and Rape fell against the manifest weight of the evidence.

4. The Trial Court committed plain error by failing to merge the allied offense of Abduction and Rape.

{¶ 4} Trial testimony relevant to appellant's claimed errors is summarized below. The trial court heard testimony from the victim, her son, a Perrysburg Township police officer, the victim's supervisors at her two jobs, the nurse who examined the victim after the assault and appellant's sister.

{¶ 5} The victim in this matter testified that she and appellant had known each other since October 2013. Appellant moved in with the victim at some point after that. On April 12, 2014, the victim spent the day with friends and arrived home at about 8:00 p.m. She wanted to go right to sleep because she had to get up by 2:00 a.m. to deliver newspapers. The victim testified that appellant became angry because she did not want to have sex with him. Appellant then left, and the victim went to sleep. When she awakened at 2:00 a.m., appellant took her cell phone. When the victim tried to get her phone, appellant chased her back into the bedroom and jumped on top of her on the bed. The victim yelled for help, hoping a neighbor would hear her. At that point appellant put a pillow over her face. The victim continued to struggle, begging appellant to let her leave so she could go to work. The victim then broke free and tried to get to the door. The two struggled and the victim fell to the floor and appellant prevented her from standing up. After a while, the victim asked to go to the bathroom. Appellant followed

3.

her and stood in the doorway. After about an hour, the victim's cell phone began to ring; appellant showed her the phone and she saw that she was receiving calls from her supervisor and her son, who delivered papers with her. Appellant held onto the phone and would not allow the victim to answer it.

{¶ 6} The victim testified that appellant refused to let her leave and eventually held her down on the bed, spread her legs and forced a "sex toy" into her vagina. She further testified that appellant then grabbed her by her hair and forced her to perform oral sex on him. Eventually, the victim's son came to her home and let himself in. Appellant then gave the victim her phone. The victim got ready for work and told appellant to leave before she returned. Appellant was there, however, when she returned home. The victim again told him to leave and left to spend some time with her friends. It is unclear from the record whether appellant was at her home when she returned later. The following day, the victim made a police report and went to the hospital to be examined. Appellant was arrested on April 21, 2014.

{¶ 7} The victim's son, J., testified that appellant called him on the night of April 12, 2014, and said that the victim had been out drinking all night. Appellant told J. that if the victim called him he should not come help her because she needed to learn a lesson about going out drinking all night. J. received several calls from the Blade supervisor beginning at approximately 5:30 a.m. because his mother had not picked up her papers. J. called and texted his mother to no avail and eventually drove to his mother's home. J. testified that his mother was asleep so he woke her up and asked her if she was alright.

4.

The victim told him she was and got up and dressed. Once in the kitchen with her son, the victim showed him bruises and said appellant had beaten her, told her he was going to kill her, and held a pillow over her face. He stated that as they stepped outside his mother started crying and "freaking out." He and his mother then drove to the paper station where he helped load the papers before leaving.

{¶ 8} Cheryl Addis, a nurse in the St. Luke's Hospital emergency room, testified that she observed fingertip type bruising on the victim's arms and legs. K.F., appellant's sister, testified that her brother stopped by her home on April 12, 2012, at about 10:00 p.m. He left after about an hour, went to the Pioneer Tavern and returned to his sister's home at about 1:30 a.m. He left right away, saying that he had to get the victim up to deliver her papers. She stated that appellant returned to her place at10:00 a.m. the following morning. He was very quiet and sat on her couch texting on his phone.

{¶ 9} In support of his first assignment of error, appellant asserts that the state did not provide legally sufficient evidence to support the conviction of disrupting public services because there was no testimony that he damaged the victim's cell phone or otherwise tampered with it.

{¶ 10} Sufficiency of the evidence is a legal standard that tests whether the evidence submitted at trial is legally sufficient to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). On appeal, the test is whether, when "viewing the evidence in a light most favorable to the prosecution, any rational trier of

5.

fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Criminal convictions should not be overturned on the basis of insufficient evidence unless reasonable minds could not reach the same conclusion as the trier of fact. *State v. Smith*, 6th Dist. Lucas No. L-14-1119, 2015-Ohio-2676, ¶ 8.

{¶ 11} Appellant was convicted of one count of disrupting public services pursuant to R.C. 2909.04(A)(1), which states in relevant part:

(A) No person, purposely by any means or knowingly by damaging or tampering with any property, shall do any of the following:

(1) Interrupt or impair * * * telephone * * * or other mass communications service * * * being used for public service or emergency communications[.]

{¶ 12} As set forth above, testimony was presented at trial that appellant maintained possession of the victim's cell phone for an extended period of time during which she was not able to answer calls or summon help.

{¶ 13} Appellant argues that merely taking a phone from a person and not allowing her to use it for a period of time does not constitute sufficient evidence for a conviction of this offense. Appellant asserts that proof of some damage to a phone is necessary to support this conviction. Ohio courts have found to the contrary, however. In a case where the defendant threw the victim's cell phone into a neighboring yard, the Seventh District held that "the deciding factor in these cases is whether the defendant's

6.

conduct caused the victim to be unable to use that telephone." *State v. Hill*, 7th Dist. Mahoning No. 09MO3, 2010-Ohio-4871, ¶ 25. In *State v. Galindo*, 5th Dist. Stark No. 2011CA00258, 2012-Ohio-3626, ¶17, the court held that "[t]he statute is aimed at conduct which prevents a victim from using public services to seek emergency assistance."

{¶ 14} In this case, the jury heard testimony that appellant's conduct clearly and purposely prevented the victim from using her phone to summon help. We therefore find, after viewing the evidence in a light most favorable to the prosecution, that any rational trier of fact could have found the essential elements of the crime of disrupting public services proven beyond a reasonable doubt. Accordingly, appellant's argument that his conviction was not supported by sufficient competent, credible evidence is without merit and his first assignment of error is not well-taken.

{¶ 15} In his second assignment of error, appellant asserts that the state failed to provide legally sufficient evidence to sustain a conviction of abduction. He argues that the only alleged instance of his physically restraining her occurred during the alleged rape.

{¶ 16} Pursuant to R.C. 2905.02(A)(2), "No person, without privilege to do so, shall * * * [b]y force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear * * *."

{¶ 17} Restraint of liberty has been construed by Ohio courts to mean to limit one's freedom of movement in any fashion for any period of time, whether under a

7.

charge of kidnapping or abduction. *See, e.g., State v. Martin*, 10th Dist. Franklin Nos. 02AP-33, 02AP-34, 2002-Ohio-4769; *State v. Walker*, 9th Dist. Medina No. 2750-M, 1998 Ohio App. Lexis 4067 (Sept. 2, 1998) (restraint of liberty does not require prolonged detainment).

{¶ 18} Ohio law is clear that a conviction pursuant to R.C. 2905.01 does not turn on the manner in which an individual is restrained. Rather, it hinges on whether the restraint "is such as to place the victim in the offender's power and beyond immediate help, even though temporarily." *See State v. Pawlak*, 8th Dist. Cuyahoga No. 995552014-Ohio-2175, ¶ 60. The restraint "need not be actual confinement, but may be merely compelling the victim to stay where [s]he is." *State v. Mosley*, 178 Ohio App.3d 631, 2008-Ohio-5483, 899 N.E.2d 1021, ¶ 20 (8th Dist.), quoting *State v. Wilson*, 10th Dist. Franklin No. 99AP-1259, 2000 Ohio App. LEXIS 5057 (Nov. 2, 2000).

{¶ 19} In this case, the victim testified that appellant threatened her for hours. At one point, she tried to get out of the bedroom but appellant stood between her and the doorway and would not let her leave. They struggled and the victim fell to the bedroom floor, where she remained temporarily unable to get up as a result of limited mobility due to a leg injury suffered in a motorcycle accident. Contrary to appellant's argument, the victim was restrained at times in addition to the incidents of rape.

{¶ 20} Based on the foregoing, we find that the state proved the essential elements of the offense of abduction and appellant's second assignment of error is not well-taken.

8.

**{¶ 21}** In his third assignment of error, appellant argues that his convictions for rape, abduction and disruption of public services were against the manifest weight of the evidence. Appellant states that "based on the testimony of the state's other witnesses, [the victim's] testimony just does not reach the level of credibility required to find a person guilty beyond a reasonable doubt." Appellant is essentially challenging the testimony provided by the victim's son, two of her work supervisors and the nurse who examined her at the hospital as a means of attacking the victim's credibility.

**{¶ 22}** "A manifest weight challenge questions whether the state has met its burden of persuasion." *State v. Davis*, 6th Dist. Wood No. WD-10-077, 2012-Ohio-1394, ¶ 17, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In making this determination, the court of appeals sits as a "thirteenth juror" and, after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* at 386.

**{¶ 23}** In our discussion of appellant's first two assignments of error related to his convictions of abduction and disrupting public services, we set forth the elements of those offenses; therefore, the relevant statutory language will not be repeated here. As to the offense of rape under which appellant was convicted, R.C. 2907.02(A)(2) states: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

9.

{¶ 24} We note that there were essentially no conflicts as to the relevant evidence as provided by the victim. Appellant's only witness was his sister, who was not present during the assault. As summarized above, the victim testified in detail that she was repeatedly raped, prevented from leaving the bedroom and prevented from using her cell phone to call for help. After considering the entire record that was before the trial court and weighing the evidence and all reasonable inferences we find that appellant's convictions as to rape, abduction and disrupting public services were not against the manifest weight of the evidence. Accordingly, appellant's third assignment of error is not well-taken.

{¶ 25} In support of his fourth assignment of error, appellant asserts that the trial court erred by not merging the convictions of abduction and rape. Appellant does not, however, support this argument with an application of those offenses to the relevant law.

{¶ 26} We first note that appellant failed to raise a claim that the three offenses are allied offenses of similar import before the trial court, which operates as a waiver of appellant's right to raise the issue on appeal. *State v. Edwards*, 6th Dist. Lucas No. L-08-1408, 2010-Ohio-2582, ¶8 (citations omitted). Thus, "[a]n error not raised in the trial court must be plain error in order for an appellate court to reverse." *Id*., citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2 804 (1978). To show plain error, appellant must demonstrate that the outcome of the trial clearly would have been different but for the error. Such a finding must be made with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *Id*.

10.

**{¶ 27}** R.C. 2941.25 provides:

(A)  Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant maybe convicted of only one.

(B)  Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶ 28}** In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Supreme Court of Ohio held that in determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors:  the conduct, the animus and the import.  *Id*. at paragraph one of the syllabus.

**{¶ 29}** As applied to the present case, the rape and abduction offenses do not merge because the record shows that appellant possessed a separate specific intent to commit each offense where the rapes and abduction clearly occurred separately.  Each offense   carried a separate risk of physical and emotional harm.  There occurred separate instances of abduction where appellant refused to let the victim leave the bedroom and stood in the doorway blocking her way out when she used the bathroom at one point.  Those acts occurred before the acts of rape.  The victim testified as to the emotional

trauma she experienced from knowing she could not get away, and in one instance could not get up from the floor, which was clearly separate from the emotional and physical harm she experienced from the acts of rape. Additionally, the two offenses of rape for which appellant was convicted clearly were separate acts, based on the victim's testimony. *See State v. Davic*, 10th Dist. Franklin No. 11AP-555, 2012-Ohio-952, ¶16, (holding multiple rape offenses do not merge when the appellant was alternating between cunnilingus and digital penetration because each required a separate specific intent and the victim suffered a separate risk of harm from each rape).

{¶ 30} Based on *Ruff, supra*, and our review of the record, we find that two or more offenses of dissimilar import existed under R.C. 2941.25(B), with the harm resulting from each offense being separate and identifiable.

{¶ 31} Accordingly, we find that the trial court did not err in its treatment of the separate counts of abduction and rape for sentencing purposes. Accordingly, appellant's fourth assignment of error is not well-taken.

{¶ 32} On consideration whereof, the judgment of the Wood County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.             _____
                                              JUDGE

Stephen A. Yarbrough, J.

                                 _____
James D. Jensen, P.J.                         JUDGE
CONCUR.

                                 _____
                                              JUDGE


This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.