[Cite as *State v. Coyle*, 2018-Ohio-3194.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27800 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-670 |
| | : | |
| JAMES F. COYLE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of August, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
  Attorney for Plaintiff-Appellee

JAMES P. FLEISHER, Atty. Reg. No. 0059509, 6 North Main Street, 400 National City Center, Dayton, Ohio 45402
  Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant, James F. Coyle, appeals from his conviction on one count of abduction, a third degree felony in violation of R.C. 2905.02(A)(2). Raising a single assignment of error, Coyle argues that his conviction should be overturned because the State failed to prove each element of the offense, or in the alternative, because the jury drew unwarranted conclusions from the evidence it received. We find that the evidence justified the jury's verdict, and therefore, we affirm Coyle's conviction.

## I. Facts and Procedural History

{¶ 2} On February 1, 2017, Coyle's wife, Erin Coyle, filed a report with the Butler Township Police Department in which she alleged that, the night before, Coyle had physically abused and forcibly restrained her in their residence during a protracted marital dispute; she also alleged that, during a previous dispute on January 23, 2017, Coyle had destroyed a laptop computer belonging to her employer. Appellant's Br. 2-6; Appellee's Br. 1-4. The report led to the issuance of an indictment against Coyle by a Montgomery County grand jury on March 14, 2017, charging Coyle with one count of abduction in violation of R.C. 2905.02(A)(2); one count of domestic violence in violation of R.C. 2919.25(A); and one count of vandalism—related to the destruction of the laptop computer—in violation of R.C. 2909.05(B)(1)(a). Coyle's case proceeded to trial on September 11, 2017.

{¶ 3} At the conclusion of the trial two days later, the jury found Coyle guilty on the counts of abduction and vandalism, and not guilty on the count of domestic violence. Regarding the count of vandalism, the jury found that the laptop computer allegedly destroyed by Coyle had a monetary value of less than $1,000. Coyle had been indicted,

however, for violating R.C. 2909.05(B)(1)(a), which states in relevant part that "[n]o person shall knowingly cause physical harm to property that is owned or possessed by another" if "the value of the property * * * is one thousand dollars or more." Citing the jury's determination that the computer was worth less than $1,000, Coyle moved for acquittal on the charge of vandalism, and the trial court sustained his motion in its verdict entry of September 15, 2017.

{¶ 4} On October 11, 2017, Coyle appeared for sentencing, and the court imposed community control sanctions for a term of no more than five years and ordered Coyle to pay a supervision fee of $250.00, as well as court costs. Coyle timely filed his notice of appeal to this court on November 8, 2017.

## II. Analysis

{¶ 5} For his single assignment of error, Coyle contends that:

APPELLANT'S CONVICTION FOR ABDUCTION UNDER R.C. 2905.02(A)(2) IS BASED UPON INSUFFICIENT EVIDENCE AND/OR IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 6} Coyle argues, first, that the jury's verdict of not guilty on the charge of domestic violence should be construed as a factual determination that his actions on the night of January 31, 2017, neither posed a risk of physical harm to his wife, nor caused her to experience fear. *See* Appellant's Br. 8. Second, Coyle argues that the State failed to prove, for any of three "potential incident[s] of abduction," that his conduct otherwise satisfied the elements of the offense. *See id.* at 9-13. He concludes, in the alternative, that even if the State offered nominal proof of each element of abduction, the jury's verdict on the charge cannot be reconciled with its verdict on the charge of domestic

violence, demonstrating that the jury clearly lost its way in evaluating the evidence.   *See id.* at 13.

{¶ 7} Sufficiency of the evidence "is the legal standard applied to determine whether * * * the evidence [in a given case] is [adequate] as a matter of law to support the jury['s] verdict."   *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).   On review of a challenge to a conviction based upon the sufficiency of the evidence, the " 'relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' "   *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 8} By contrast, in a challenge based on the weight of the evidence, an "appellate court acts as a 'thirteenth juror.' "   *State v. Jackson*, 2015-Ohio-5490, 63 N.E.3d 410, ¶ 49 (2d Dist.), quoting *Thompkins* at 387.   Accordingly, the appellate court must review the record; weigh the evidence and all reasonable inferences; consider the credibility of witnesses; and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice warranting a new trial. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8.   A trial court's "judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' "   *Hill* at ¶ 8, quoting *Martin* at 175.

{¶ 9} Although the appellate court "must defer to the factfinder's decisions whether,

and to what extent, to credit the testimony of particular witnesses," the court nevertheless "may determine which of several competing inferences suggested by the evidence should be preferred." (Citation omitted.) *State v. Cochran*, 2d Dist. Montgomery No. 27023, 2017-Ohio-216, ¶ 6. A determination that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of the sufficiency of the evidence, because "a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citation omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11; *State v. Miller*, 2d Dist. Montgomery No. 25504, 2013-Ohio-5621, ¶ 48, citing *McCrary* at ¶ 11.

{¶ 10} In the first part of his argument, Coyle maintains that the jury's verdict of not guilty on the charge of domestic violence precluded the possibility that he had committed any act which would constitute the crime of abduction. *See* Appellant's Br. 8. A conviction for domestic violence under R.C. 2919.25(A) requires proof that the defendant knowingly caused, or attempted to cause, physical harm to a member of the defendant's family or household. Pursuant to R.C. 2905.02(A)(2), a conviction for abduction requires proof that the defendant—lacking any legal immunity, license or right—knowingly: (1) used force or made threats directed at another person; (2) restrained the other person's liberty; and (3) either created a risk that the other person would thereby suffer physical harm, or caused the other person to experience fear. By finding him not guilty of causing or attempting to cause physical harm to his wife, Coyle posits that the jury "effectively" indicated that "it did not believe" that he did anything to create a risk that his wife would be harmed, or to cause her to feel afraid. Appellant's Br. 8.

{¶ 11} Coyle's proposition lacks merit. A risk, according to R.C. 2901.01(A)(7), is

"a significant possibility, as contrasted with a remote possibility, that a certain result may occur or that certain circumstances may exist."[1]    Thus, to find Coyle guilty of abduction pursuant to R.C. 2905.02(A)(2) for creating a risk of physical harm to his wife, the jury did not have to believe that Coyle harmed her or even that he tried to harm her; instead, the jury simply had to find that Coyle put his wife in a position in which she faced "a significant possibility" of suffering injury, including the possibility that she might injure herself while attempting to escape from a restraint on her liberty.[2]   *See, e.g., People v. Sumler*, 2015 IL App (1st) 123381, 30 N.E.3d 383, ¶ 26, 28-29, and 55-60 (finding that a defendant "created a significant danger" to another person by "forcing the [person] to ride in a vehicle at a high rate of speed through city streets," which created the possibility, among others, "that [the person] could have injured herself in attempting to escape from the speeding vehicle").    Likewise, to find Coyle guilty of abduction for inducing his wife to feel fear, the jury did not need to believe that he actually caused or attempted to cause her physical harm.   *Compare Wilson v. Wilson*, 2d Dist. Montgomery No. 21443, 2007-Ohio-178, ¶ 21 (noting elements of a claim for civil assault); *Vandiver v. Morgan Adhesive Co.*, 126 Ohio App.3d 634, 638, 710 N.E.2d 1219 (9th Dist.1998) (same).

{¶ 12} In the second part of his argument, Coyle maintains that the State failed to prove that his actions met the elements of R.C. 2905.02(A)(2) during any of the "three

---

[1] The trial court included the statutory definition of risk in its instructions to the jury.   Tr. 354:20-354:22.

[2] Although R.C. 2905.02(A)(2) prohibits the restraint of a person's liberty "[b]y force or threat," the force-or-threat element of the offense did not require that the jury believe Coyle applied physical force directly to his wife's body.   The term "force" is defined by R.C. 2901.01(A)(1) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."   (Emphasis added.)

situations" or incidents "that constitute[d] the abduction in this case," each of which occurred in the detached garage of the Coyles' residence. Appellant's Br. 9-13; Tr. 9:10-10:4, 22:2-22:20 and 305:2-305:19. The garage itself had a standard "pedestrian" entrance along with two bays for vehicles, one of which could be opened with a motorized door-opener and the other of which had to be manually opened. Tr. at 48:1-48:6 and 48:23-50:24.

{¶ 13} Regarding the first of the three incidents, Erin Coyle testified that she decided to leave the premises after arguing with Coyle inside their house, so she walked out to the garage with a bag of clothes, a bag for work, and her purse. Tr. at 55:2-55:8. She put the bags into her car, but when she attempted to approach the motorized door-opener control, she encountered Coyle, who "had his hand over" the control and told her that she "would have to go through him or find another way out * * * because he would not let [her] leave." Tr. at 55:12-56:6.

{¶ 14} Coyle argues that the State "failed to prove that he" used force or made threats against his wife in the foregoing situation, because "[while] he [was] blocking" the door-opener control, he "never touched [her], let alone physically constrained or compelled her [to remain where she was]." Appellant's Br. 10. He maintains that he did not "restrain [her] liberty by holding his hand over" the door-opener control inasmuch as she "always had an [alternative] exit" through the door to the other bay or through the pedestrian door, and he insists that "the simple action" of blocking the control posed "no risk of physical harm." *Id.* at 9 and 11. Further, Coyle assumes that if his wife had been made to feel fear, the "origin of [such] fear [was] the incidents that allegedly occurred inside the house," but given that "the jury necessarily rejected [the truth of these incidents

by] acquitt[ing] [him] of domestic violence," he suggests that his wife had "no legitimate reason" to be afraid "merely [because he was] blocking" the door-opener control. *Id.* at 11.

**{¶ 15}** We find that the State did prove each of the elements of abduction with respect to this incident. The term "force" is defined by R.C. 2901.01(A)(1) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person <u>or thing</u>." (Emphasis added.) By placing his hand over the door-opener control, Coyle physically constrained his wife's ability to use the control and, by extension, to leave the premises. Coyle's statement to the effect that his wife would have to remain or "go through him," furthermore, qualifies as a threat, and irrespective of the duration for which Coyle impeded his wife's ability to leave the garage, or the availability of other exits, even a momentary impediment constitutes a restraint on liberty.[3] *See, e.g., State v. Tajblik*, 6th Dist. Wood No. WD-14-064, 2016-Ohio-977, ¶ 17; *State v. Martin*, 10th Dist. Franklin Nos. 02AP33 & 02AP34, 2002-Ohio-4769, ¶ 32. And, even assuming hypothetically that Erin Coyle did not face a significant risk of being harmed (or further harmed) at that instant, she testified under oath that she felt "scared" not only "[b]ecause of the fighting that already occurred," but also because she "knew that [she] would not have a chance" of overcoming Coyle in the event of a physical altercation. Tr. 56:1-56:11; *see also State v. Garrison*, 123 Ohio App.3d 11, 18-19, 702 N.E.2d 1222 (2d Dist. 1997) (finding that verbal threats were sufficient to induce fear for purposes of a conviction for abduction).

**{¶ 16}** Regarding the second incident, Erin Coyle testified that Coyle "grabbed" her

---

[3] Erin Coyle indicated that Coyle was barring her way through the pedestrian door at the same time he was preventing her from using the door-opener control. Tr. 55:2-57:9.

from behind and "started [striking her body] against [a nearby] filing cabinet" to prevent her from opening the other bay-door (i.e. the bay-door without a motorized opener). *See* Tr. 56:25-57:17. Coyle claims that because it would be "impossible to slam [a person] against [a] filing cabinet without causing or at least attempting to cause physical harm," the jury's verdict of not guilty on the charge of domestic violence means that "the State proved only that [he and Erin] met at the manual door," or in other words, that the verdict on the charge of domestic violence precluded the possibility that the State had introduced evidence sufficient to prove that Coyle did anything other than speak to his wife in the garage. Appellant's Br. 12.

{¶ 17} Regarding the third incident, Erin Coyle testified that, after she managed to open the manual bay-door, she exited the garage and traversed roughly half of the length of the driveway, at which point Coyle "again got ahold" of her and "pulled [her] backwards hard enough that when [she] hit the ground, [she felt] the air [knocked] out of [her]." Tr. 57:16-58:15. Coyle likewise concludes, given that he was found not guilty of domestic violence, that this incident did not satisfy any of the elements of abduction because the jury "necessarily did not believe [his wife's] version of events." Appellant's Br. 12-13.

{¶ 18} Coyle overstates the significance of the jury's verdict on the charge of domestic violence. *See* Appellant's Br. 11-13. He contends the verdict demonstrates that the jury "did not believe" his wife's testimony about his physically abusive behavior, and he characterizes the jury's purported disbelief as equivalent to a formal adjudication of fact. *See id.* Yet, the jury's verdict that Coyle did not cause or attempt to cause his wife physical harm is not, of itself, equivalent to a factual determination that Coyle did not behave violently before or after he followed his wife out to the garage. For that matter,

even if the verdicts on the charges of abduction and domestic violence were incompatible to some extent, "courts in Ohio have held on numerous occasions that an inconsistency [among] verdict[s] cannot arise from inconsistent responses to different counts," but instead, an inconsistency arises only "when a jury gives inconsistent responses to the same count." (Citations omitted.) *State v. Hawkins*, 2d Dist. Montgomery No. 21691, 2007-Ohio-2979, ¶ 23-24. The jury's verdict on the charge of domestic violence, then, is irrelevant to an evaluation of the sufficiency of the evidence introduced in support of the charge of abduction.

{¶ 19} Finally, Coyle makes the alternative argument that the jury's verdict on the charge of abduction was against the manifest weight of the evidence. Appellant's Br. 13. We find, on our independent review of the record, that the jury did not clearly lose its way in finding Coyle guilty of abduction. Because the only direct evidence available to the jury was the parties' own testimony, the verdict was essentially determined by the jury's assessment of the credibility of James Coyle's testimony vis-à-vis the credibility of Erin Coyle's testimony. In our evaluation of the record, we discovered no reason to second-guess the jury's assessment, nor does the evidence overall weigh heavily against Coyle's conviction.

### III. Conclusion

{¶ 20} For all of the foregoing reasons, we find that the jury's verdict of guilty on the charge of abduction under R.C. 2905.02(A)(2) was supported by sufficient evidence, and that the verdict was not against the manifest weight of the evidence. Coyle's assignment of error is overruled, and his conviction is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Michael J. Scarpelli
James P. Fleisher
Hon. Dennis J. Adkins