[Cite as *State v. Miller*, 2024-Ohio-5032.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

State of Ohio                                    Court of Appeals No.  F-23-006

    Appellee                                 Trial Court No.  23CR001

v.

Quinten R. Miller                        **DECISION AND JUDGMENT**

    Appellant                                Decided:  October 18, 2024

* * * * *

Karin L. Coble, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal of an April 12, 2023 judgment of the Fulton County Court of Common Pleas, acquitting appellant of one count of domestic violence, in violation of R.C. 2919.25(A), a felony of the third degree, and one count of the disruption of public services, in violation of R.C. 2909.04(A)(3), a felony of the fourth degree, while finding appellant guilty on the related count of abduction, in violation of R.C. 2905.02(A)(2), a felony of the third degree.  On May 24, 2023, appellant was sentenced to a 30-month

term of incarceration. For the reasons set forth below, this court reverses the judgment of the trial court and vacates appellant's conviction for abduction.

{¶ 2} Appellant, Quinten Miller, sets forth the following two assignments of error:

"One: The evidence was both legally insufficient and [the conviction was] against the manifest weight of the evidence, rendering the conviction a violation of Mr. Miller's right to a fair trial in violation of the Ohio Constitution and the U.S. Constitution.

"Two: The sentence [] is clearly and convincingly unsupported by the record."

{¶ 3} The following undisputed facts are relevant to this appeal. In December of 2021, appellant began a relationship with T.C., the victim in this case. Several months into the relationship, appellant moved in with T.C. and her minor daughter in their Wauseon apartment. Approximately one year later, following a period of tumult in the relationship, appellant moved out of T.C.'s apartment, but the pair remained in touch and on amicable terms.

{¶ 4} Shortly after moving out of T.C.'s apartment, appellant became homeless and began living in a motor vehicle owned by an acquaintance. Appellant parked the vehicle in the local Walmart parking lot. On December 3, 2022, appellant contacted T.C. via text message and asked for permission to spend the night in her apartment, as he was ill and quite cold given the combination of December weather and living in a parked vehicle. T.C. consented and advised appellant that he could come to her apartment for the night in order to get in out of the cold. This appeal arises from the events that occurred upon appellant's arrival at T.C.'s apartment that night.

2.

{¶ 5} Upon admitting appellant into her apartment, T.C. did not speak to him. Rather, she silently walked down the hall and went into her bedroom, closed the door, and locked it. Appellant, by his own admission, became agitated and temperamental in response to this reception.

{¶ 6} Appellant went down the hall, loudly spoke at T.C. through the closed door, demanded to know what the issue was, and then damaged the door while attempting to open it. Following appellant's outburst, T.C. opened the door, told appellant that she was going to call the police, and advised him that he needed to leave her apartment.

{¶ 7} At this juncture, T.C. began to walk down the hallway back towards the living room. Appellant followed. Once they were in the living room, appellant grabbed or pulled at T.C.'s arms, she pulled away and fell to the floor. T.C. got up. Appellant again grabbed or pulled at T.C.'s arms and she fell to the floor a second time. T.C. got up again, exited her apartment, and went to a neighbor's apartment. T.C.'s minor daughter was asleep in her bedroom in the apartment during these events and remained in the apartment alone with appellant upon T.C. exiting and going to her neighbor's apartment.

{¶ 8} For clarity on these events, the record is devoid of evidence that appellant physically detained T.C. prior to her exit from her apartment, physically blocked the door to impede or prevent T.C.'s exit from her apartment, verbally threatened T.C. to not leave her apartment, or was aware that T.C. planned on leaving her apartment.

{¶ 9} After T.C. exited and went next door, her neighbor called the Wauseon Police Department and reported the incident. The Wauseon Police Department responded

3.

to the scene, but appellant had left the location in the interim. The responding officers interviewed T.C., the neighbor, and subsequently contacted appellant to obtain his statement on what had transpired.

{¶ 10} On January 10, 2023, following the conclusion of the police investigation, appellant was indicted on one count of abduction, in violation of R.C. 2905.02(A)(2), a felony of the third degree, one count of domestic violence, in violation of R.C. 2919.25(A), a felony of the third degree, and one count of the disruption of public services, in violation of R.C. 2909.04(A)(3), a felony of the fourth degree.

{¶ 11} On April 11, 2023, a two-day jury trial was conducted. T.C. was the first witness called to testify at trial. T.C. testified that on December 3, 2022, she was at home in her apartment recovering from the flu. T.C. stated that appellant contacted her to ask if he could spend the night at her apartment due to the cold weather conditions outside. T.C. agreed. T.C. testified, "[Appellant] showed up after texting and calling and asking to come in [out of the cold] and I ended up letting him in. We had [previously] discussed that he could sleep on the couch * * * I wanted to go back to my room and lay back down and rest."

{¶ 12} T.C. next testified that upon admitting appellant into her apartment, she did not speak, went directly back into her bedroom, closed the door, and locked it. T.C. testified that appellant became agitated at the perceived slight, yelled through the door, and then kicked the door, damaging it. In response, T.C. testified that, "I ended up

4.

opening the door and asking him to leave * * * I told him that I was going to be calling the police."

{¶ 13} T.C. then testified that she followed appellant down the hallway and into the living room, and that appellant, "[G]rabbed me * * * [the motion was] like a push and a pull." T.C. relayed that she fell, got up, and then, "It happened again [appellant grabbed her arm, causing her to fall a second time]." T.C. testified that she had no recollection of what, if anything, was said between the two during this time.

{¶ 14} T.C. next testified that she got up, exited her apartment, went to her neighbor's apartment, and her neighbor called the police to report the incident. T.C. testified, "I was able to make it out of my front door and that [is] when I ran to my neighbor's home." The record shows that T.C.'s minor daughter was asleep in her bedroom in T.C.'s apartment during these events. The record further shows that T.C. did not retrieve her daughter before leaving the apartment, but rather left her daughter inside the apartment with appellant. T.C. testified, "I did not want her to be in the middle of it or witness anything."

{¶ 15} T.C. then read into evidence the text message sent to her by appellant shortly after the incident. Appellant texted T.C., in relevant part, "*I was going to try to calm you down when I went to grab you * * * I didn't mean to make you fall. I really don't feel good babe I've been [living] in this fucking car*." (Emphasis added).

{¶ 16} T.C.'s neighbor next gave testimony to the trial court. The neighbor testified, in relevant part, "*[W]e weren't sure what was going on -- it was hard to get what*

5.

*was going on [from T.C.] -- but she was very apologetic and saying that she was sorry to interrupt our evening and sorry that she came over sick*." (Emphasis added).

{¶ 17} Officer Mitchell Huner ("Huner") of the Wauseon Police Department, one of the responding officers, next testified to the trial court. Huner testified, in relevant part, "She explained that her boyfriend [appellant] had come over, they had gotten into an argument * * * I believe she stated that she said [to appellant that] she was going to call the cops[,] at that point *she advised me that [appellant] had pushed her down*." (Emphasis added).

{¶ 18} During closing arguments, as pertains to the sole conviction of abduction, appellee argued, "She told him you need to leave, I'm calling the police * * * he throws her to the ground twice *so that she can't leave. That is restraint, and he did so by force*." (Emphasis added). Discordant with this characterization, we reiterate that the record is devoid of evidence that T.C. intended to leave the apartment such that appellant's acts could arguably be construed as demonstrative of restraint.

{¶ 19} On April 12, 2023, the jury acquitted appellant of domestic violence and the disruption of public services, but convicted appellant of abduction. On May 24, 2023, appellant was sentenced to a 30-month term of incarceration. This appeal ensued.

{¶ 20} In the first assignment of error, appellant alleges that the abduction conviction was not supported by a sufficiency of the evidence and against the manifest weight of the evidence. Upon review, we find that after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the restraint

6.

element of appellant's R.C. 2905.02 (A)(2) crime conviction proven beyond a reasonable doubt. Because we find appellant's conviction for abduction is based upon insufficient evidence, we need not address appellant's manifest weight of the evidence argument.

{¶ 21} In our review of this case, the crux of our consideration centers upon whether appellee furnished sufficient evidence in support of the restraint element of the offense of abduction, so as to have properly convicted appellant of abduction.

{¶ 22} R.C. 2905.02(A)(2) establishes that, "No person, without privilege to do so, shall do any of the following: By force or threat, *restrain the liberty of another person* under circumstances that creates a risk of physical harm to the victim or place the other person in fear." (Emphasis added).

{¶ 23} As held by this court in *State v. Stevens*, 232 N.E.3d 343, 2023-Ohio-343, ¶ 118, 131,

> In reviewing a sufficiency of the evidence claim, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

> Relatedly, this court held in *State v. Tajblik*, 2016-Ohio-977, ¶ 17-19 (6th Dist.),

> Restraint of liberty has been construed by Ohio courts to mean to limit one's freedom of movement in any fashion for any period of time, whether

7.

under a charge of kidnapping or abduction * * * The restraint need not be actual confinement, but may be merely compelling the victim to stay where she is. *State v. Mosely*, 178 Ohio App.3d 631, 2008-Ohio-5483, 899 N.E.2d 1021 (8th Dist.) * * * *In this case, the victim testified that appellant threatened her for hours. At one point, she tried to get out of the bedroom but appellant stood between her in the doorway and would not let her leave*. (Emphasis added).

{¶ 24} Accordingly, *in Tajblik*, this court found the element of restraint satisfied for purposes of an abduction conviction based upon the verbal threats, in conjunction with the physical blockage of the defendant of the doorway, precluding the victim from departing the location.

{¶ 25} Similarly, in *In re L.S.*, 2023-Ohio-4122, ¶43 (8th Dist.), the Eighth District Court of Appeals recently held, "S.C. testified that she pushed [appellant's] hand away and told him no probably like 15 times. *She also pressed against his chest during the act but was unable to get up [due to being physically held down by appellant] which constitutes restraint * * * Thus, the elements of force and restraint were substantiated*." (Emphasis added).

{¶ 26} By contrast, the record in the instant case is devoid of any evidence that appellant physically held or otherwise detained T.C., physically blocked her from exiting her apartment, verbally threatened her from leaving her apartment, or that she was impeded in an intention to exit her apartment. Rather, the record shows that T.C. asked

8.

appellant to leave her apartment following a dispute between the two and appellant subsequently grabbed or pulled on T.C.'s arms in an apparent effort to talk with her. The record shows that T.C. has no recollection of what, if anything, was said between the two at this time. The record shows that T.C. then exited her apartment without impediment.

{¶ 27} Accordingly, we find that the record in this case lacks sufficent evidence in support of the R.C. 2905.02(A)(2) restraint element of the offense of abduction and, therefore, the abduction conviction is not supported by a sufficiency of the evidence, such that a rational trier of fact, even when viewing the evidence in the light most favorable to the prosecution, could have found the restraint element of the offense proven beyond a reasonable doubt. Given these facts and circumstances, we find appellant's first assignment of error well-taken.

{¶ 28} In the second assignment of error, appellant alleges that the trial court's imposition of a 30-month term of incarceration on the abduction conviction is clearly and convincingly unsupported by the record. Given our determination above, in response to appellant's first assignment of error, finding that the sole conviction of abduction was not supported by a sufficiency of the evidence, thereby vacating the sentence imposed from that erroneous conviction as a matter of law, we find the second assignment of error moot.

9.

{¶ 29} On consideration whereof, the judgment of the Fulton County Court of Common Pleas is hereby reversed, and appellant's conviction is vacated.  Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed<br>and vacated.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                             _____
                                                   JUDGE

Myron C. Duhart, J.             
CONCUR.

                                                   _____

Charles E. Sulek, P.J.                                               JUDGE
DISSENTS AND WRITES
SEPARATELY.

**SULEK, P.J., dissenting,**

{¶ 30} Contrary to the majority's holding, Quinten Miller's abduction conviction is supported by legally sufficient evidence establishing each element of abduction beyond a reasonable doubt.

{¶ 31} Whether there is sufficient evidence to support a conviction is a question of law.  *State v. Bailey*, 2023-Ohio-657, ¶ 13 (6th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'"  *State v. Smith*, 80

10.

Ohio St.3d 89, 113, (1997), quoting *State v. Jenks*, 61 Ohio St.3d 259, (1991), paragraph two of the syllabus.

R.C. 2905.02(A)(2), the abduction statute, states:

> (A) No person, without privilege to do so, shall knowingly do any of the following:
>
> . . .
>
> …
>
> (2) By force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear. . . .

{¶ 32} "The term '[f]orce' is defined as 'any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing.'" *State v. Ahreshien*, 2021-Ohio-1223, ¶ 30 (6th Dist.), quoting R.C. 2901.01(A)(1). "'Restraint of liberty' means 'to limit one's freedom of movement in any fashion for any period of time.'" *Id.*, quoting *State v. Worrell*, 2005-Ohio-1521, ¶ 53 (10th Dist.). "'[E]ven a momentary restraint may qualify as an abduction if it produces the required risk of physical harm to or fear in the victim.'" *Id.* at ¶ 32, quoting *State v. Willis*, 2002-Ohio-6303, ¶ 12 (12th Dist.); *see also State v. Coyle*, 2018-Ohio-3194, ¶ 15 (2d Dist.).

{¶ 33} In *Coyle*, the defendant's act of placing his hand over the garage door-opener control and stating that if the victim wanted to leave, she "'would have to go through him'" satisfied the elements of abduction. *Id.* at ¶ 15.

{¶ 34} Here, the majority states multiple times that the record is devoid of any evidence that Miller physically held or otherwise detained the victim, physically blocked

her from exiting her apartment, verbally threatened her from leaving her apartment, or that she was impeded in an intention to exit her apartment. This is untrue.

{¶ 35} The day of the incident, the victim testified that she was sick with the flu when Miller came to her apartment and asked to come in because he had nowhere else to go and needed to lay down. After letting Miller in, the victim walked 15-20 feet to her bedroom and locked the door. Miller began screaming, kicked a hole in the door, and accused the victim of being disrespectful. The victim opened the bedroom door and asked Miller to leave. When he refused, she told him that she was going to call the police. Miller took her phone.

{¶ 36} The victim then testified: "I tried to go for the door to leave my house and I got thrown to the ground. . . He was directly in front [of] me and I was turned to the side to head toward my door and he grabbed me and threw me the opposite direction into my dining room area." She stated that her head "hit the floor and snapped back," and she thought she was going to lose consciousness. When the victim "tried to get up and go for the door," she testified that "[i]t happened again." When her head hit the floor a second time she said Miller used "[a] lot" of force and that she "lost blocks of time and things that happened from that point on." The victim was then able to get out of the apartment and flee to her neighbor's home.

{¶ 37} The record, therefore, contains evidence that, if believed, establishes that Miller forcibly restrained the victim's liberty when he took her phone, grabbed her, and threw her down twice, causing her to hit her head. Accordingly, sufficient evidence

12.

supported the jury finding Miller guilty of abduction.  For these reasons, the conviction is also supported by the manifest weight of the evidence.  Finally, Miller's sentence is not contrary to law.  Because Miller's assignments of error are not well taken, I would affirm the trial court's judgment.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.